[No. 36012.   *En Banc.*   January 4, 1962.]

SEATTLE-FIRST NATIONAL BANK, *as Guardian ad Litem, Respondent*, v. FRANCIS W. RANKIN *et al., Appellants.*\*

\*Reported in 367 P. (2d) 835.

*Rosling, Williams, Lanza & Kastner,* by *Henry E. Kastner,* for appellants.

*Helsell, Paul, Fetterman, Todd & Hokanson,* by *William A. Helsell* and *Smith, Lindell, Krutch, Carr & Poliak,* by *Richard F. Krutch,* for respondent.

HUNTER, J.—This is an appeal from a judgment entered upon a jury verdict against the defendants, Dr. Francis W. Rankin and his wife, in a malpractice case.

Dr. Rankin (referred to as the sole defendant) is a licensed physician in Seattle and does a general practice including obstetrics. Mrs. Dorothy Irene Baird, in June of 1951, employed the defendant to attend her during her pregnancy and ultimate delivery of her child, Dorothy Earlene. In March, 1952, the defendant performed a Caesarean section whereby the child was born with a form of cerebral palsy, technically known as athetoid quadriplegia. The minor child (referred to as the plaintiff) is represented by the Seattle-First National Bank, as guardian *ad litem.*

The complaint alleged, in substance, that the defendant (appellant) negligently failed adequately to ascertain and familiarize himself with the pelvic measurements of the plaintiff's mother and that he should have known a normal delivery of the plaintiff was difficult or impossible; that the plaintiff's mother was suffering from a serious anemia during pregnancy and the defendant negligently failed to discover the condition and take proper steps to correct it; that he negligently failed to perform a Caesarean section soon enough, notwithstanding the fact that little or no progress had been noted during labor in the descent of the plaintiff through her mother's contracted pelvis; that he negligently attempted to deliver the plaintiff from below with forceps, although he should have known that normal delivery from below was impossible or difficult; and that as a proximate result of the foregoing negligent acts, the plaintiff suffered permanent brain damage.

The trial lasted twenty-two days and produced a large

record, which consists of considerable testimony by expert medical witnesses for both parties. The above allegations of negligence by the defendant were submitted to the jury. In rendering a verdict for the plaintiff, the jury assessed damages at $89,000. Judgment was entered on the verdict.

■ The first assignment of error by the defendant goes to the very heart of the plaintiff's case, in that he contends she has failed to state a claim upon which relief can be granted. The precise question presented, therefore, is whether one who is injured prior to birth by the negligence of another may recover, after birth, damages for the injury. Although this court has never been faced directly with the question, courts in many other jurisdictions have considered the validity of claims for prenatal injuries. Both parties have cited cases to support their respective positions. We have examined the cases in point, and conclude that the more just rule is that which permits a claim to recover for prenatal injuries. Without making an exact numerical count of the cases for and against recognition of such a claim, we are satisfied that the position we take here is in accord with the clear trend of recent decisions. *Keyes v. Construction Ser., Inc.*, 340 Mass. 633, 165 N. E. (2d) 912 (1960); *Bennett v. Hymers*, 101 N. H. 483, 147 A. (2d) 108 (1958); *Smith v. Brennan*, 31 N. J. 353, 157 A. (2d) 497 (1960); *Sinkler v. Kneale*, 401 Pa. 267, 164 A. (2d) 93 (1960); *Wendt v. Lillo*, 182 F. Supp. 56 (N. D. Ia. 1960). Furthermore, we are convinced that our holding does not collide with any unyielding theoretical barrier. The words of the Court of Appeals of New York in *Woods v. Lancet*, 303 N. Y. 349, 102 N. E. (2d) 691, 27 A. L. R. (2d) 1250 (1951) are appropriate:

"To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact. This child, when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother. We agree with the dissenting Justice below that 'To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded,

timeworn fiction not founded on fact and within common knowledge untrue and unjustified.' "

We are not unmindful of the fact that a claim for prenatal injuries is prone to present difficult causation issues. This, however, is no reason to deny the sufficiency of the pleading. Difficulty of proof does not prevent the assertion of a legal right.

■ The defendant next contends the court committed error when it submitted to the jury the issue of the defendant's liability for injury caused by negligently failing to discover and treat Mrs. Baird's anemic condition. Specifically, it is argued that the evidence was insufficient to support a finding of causation between the alleged negligent treatment for the mother's anemia and the plaintiff's anoxia which is alleged to be the cause of the plaintiff's condition; and inasmuch as the jury could have based its verdict upon this particular neglectful conduct alone, the submission of the issue was prejudicial to the defendant.

From our examination of the record, we are convinced there is sufficient medical testimony to support a jury finding that the plaintiff's mother did have a serious anemic condition during pregnancy, and that the defendant negligently failed to discover and treat that condition according to the standard of practice in the Seattle area where the defendant conducted his practice. The medical testimony further discloses the plaintiff, during the delivery, developed "anoxia" which is the term used for inability to maintain oxygen. There was medical testimony that the anoxia was a probable cause of the plaintiff's cerebral palsy. On the matter of whether the failure to treat the anemia resulted in the development of anoxia, the following testimony is relevant. To show the purpose of treatment for anemia in a pregnant woman, Dr. Jepson testified:

"I think there are probably more than one. Number one, there is always some blood loss at the delivery of a baby and this could possibly put this lady into shock. *Perhaps even more reason than that, fetal anoxia which might be present to cause damage to the baby.*" (Italics ours.)

On the same question, Dr. Hauser testified:

"I would say that, in answer to this, that there are accidents of pregnancy which one cannot anticipate which entail severe bleeding. If this should occur at any time after a reading such as this, the patient, who already has a moderately severe anemia, might more easily go into shock. This would be, of course, detrimental to the patient. This would also have the same effect on the baby. *The baby would suffer the risk of anoxia if the mother was to go into shock or to lose more blood than she has already here.*" (Italics ours.)

The medical testimony further discloses that an episiotomy was performed during the birth which would have resulted in a substantial blood loss.

The foregoing testimony, and the reasonable inferences therefrom, viewed most favorably for the plaintiff, could support a jury finding that the failure to treat Mrs. Baird's anemic condition, more likely than not, caused an environment during delivery in which the plaintiff child could not receive the proper supply of oxygen from the mother to help prevent damage resulting from the prolonged anoxia. The contention that there was no proof of causal relation between the alleged negligent treatment for the mother's anemia and the plaintiff's anoxia is not sustained in the record.

■ Error is assigned to the use at the trial of the defendant's answers on deposition, as such answers appeared before corrections were made thereto. The original, uncorrected answers were used by the plaintiff on examination of the defendant as an adverse witness and the original and corrected answers were read to the jury by plaintiff's counsel. The defendant asks for an interpretation of Rule of Pleading, Practice and Procedure 30 (e) to the effect that a deposition is not the final testimony of the witness until he is given an opportunity to make changes or corrections, *and when an answer is changed or corrected, the answer, as originally given, is not admissible in court as substantive evidence.*

Plainly, the rule is not to be so interpreted. A clear dis-

cussion appears in 4 Moore's Federal Practice (2d ed.) 2053, § 30.20, where the author analyzes Rule 30 (e) of the Federal Rules of Civil Procedure, which is identical to our Rule 30 (e):

"Rule 30 (e) is clear and needs little discussion, except to point out the utility of the second sentence thereof.

"Under some of the state practices, considerable administrative difficulty arose where a witness wished to change his testimony. Was the original testimony to be entirely eliminated and the changed testimony inserted in its place or how was the matter to be handled? It is obvious that the witness should be permitted to change his testimony, but at the same time it is important that the original testimony appear in the deposition as well as the changed testimony, so that if the deposition is used at the trial, a true picture will be presented. Rule 30 (e) solves this administrative difficulty by permitting changes in testimony to be made, but both the original and the changed testimony will appear in the deposition along with a statement of the reasons given by the deponent for making the changes."

The case authority conforms to this interpretation of Rule 30 (e). *Colin v. Thompson*, 16 F.R.D. 194 (D.C.W.D. Mo. 1954) and *Capra v. Phillips Inv. Co.* (Mo.), 302 S. W. (2d) 924 (1957).

■ The defendant assigns error to the plaintiff's use of medical treatises on redirect examination of certain expert witnesses. These experts previously had been cross-examined by the defendant's counsel who extensively used medical treatises to discredit and impeach the witnesses' testimony on direct examination. On redirect examination, the plaintiff's counsel read additional material from the same chapters of the books from which defendant's counsel had quoted.

It is true that, on redirect examination, the books could not be employed for the purpose of rehabilitating a witness who already had been discredited by their use. However, their use was proper in order to explain certain passages which were read before the jury and to clarify possible misunderstandings by the jury which might have

resulted from the defendant's use of the books on cross-examination. *Hemminghaus v. Ferguson*, 358 Mo. 476, 215 S. W. (2d) 481 (1948). Upon examination of the record, it does not appear that the plaintiff's counsel exceeded these bounds in his use of the treatises. The matter was within the discretion of the trial court.

The defendant complains of improper hypothetical questions which were directed to Dr. Moore, one of the plaintiff's expert witnesses. Without going into the particulars of each interrogatory, the main objections are that some questions assumed facts which were not in the record; some questions assumed facts which, although in the record, could not have been known by the defendant at the time of his alleged negligence; some questions did not ask the witness to assume necessary facts to a proper hypothetical; and some questions improperly asked for the expert's own opinion as to the defendant's negligence.

■■ We have inspected each hypothetical to which error is assigned. In view of our previous ruling that the original deposition of the defendant was admissible in evidence, all of the questions assumed facts of which there was testimony in the record. The hypotheticals, which defendant claims involved facts of which he could not have known, were proper *because* they were propounded to show that the defendant should have known those facts. The defendant is also incorrect in his claim that certain hypotheticals asked for the witness' own opinion as to the defendant's negligence. The questions called for the witness' opinion or judgment as to whether or not the defendant's conduct was a departure from the standard of practice in Seattle. Since the witness could only give his "opinion" as to the standard of practice in the community, the form of the question was proper. See *Huttner v. MacKay*, 48 Wn. (2d) 378, 293 P. (2d) 766 (1956). The remaining objections to the hypothetical questions are without merit. The record reveals that the trial court gave careful attention to their form and content and we find no abuse of discretion on its part. *Smith v. American Mail Line, Ltd.*, 58 Wn. (2d) 361, 363 P. (2d) 133 (1961).

The defendant next contends that instructions Nos. 16 and 17 were inconsistent and misled the jury. Instruction No. 16 referred to negligence as the *most probable cause* of the injury and No. 17 referred to negligence as *the probable cause* of the injury. We find no merit in the argument. If anything, instruction No. 17, to which the main objection is directed, was more favorable to the defendant than to the plaintiff. The instructions were not prejudicial to the defendant. *Atkins v. Clein*, 3 Wn. (2d) 168, 100 P. (2d) 1 (1940).

■ Error is also assigned to instruction No. 13 which reads as follows:

"If a physician negligently fails to inform himself as to the facts and circumstances, and injury results therefrom, then he is liable; but if having fully informed himself as to the facts and circumstances, and having brought to bear the skill and knowledge usually brought to bear by other physicians in the same community, the physician merely reaches a wrong conclusion from the assembled data, he is not liable unless, *having thus incorrectly diagnosed the case, he negligently proceeds with improper treatment.*" (Italics ours.)

It is contended that the italicized portion of the instruction is an incorrect statement of the law of liability for malpractice. On the contrary, the instruction states an accurate legal proposition that applies to the facts of this case. Where a physician negligently diagnoses a case, he is not liable unless injury follows as a result of such negligence. Furthermore, without regard to the propriety of the diagnosis, negligent *treatment*, itself, which results in injury to a patient, is actionable. *Skodje v. Hardy*, 47 Wn. (2d) 557, 288 P. (2d) 471 (1955); *Peddicord v. Lieser*, 5 Wn. (2d) 190, 105 P. (2d) 5 (1940).

■ By way of demonstration, the minor plaintiff was allowed to show to the jury the extent of her mental ability. The defendant contends the demonstration was prejudicial error in that it created in the jury an intense sympathy for the child.

The degree of intelligence of the plaintiff was clearly relevant on the matter of damages. Here again, it appears

that the trial judge exercised great care in his decision to permit this method of proof. The demonstration lasted less than one hour and was conducted on the second day of a twenty-two day trial. We cannot say the trial court abused its discretion.

Finding no error in the record, the judgment is affirmed.

FINLEY, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

FOSTER, J., did not participate.

HILL, J. (concurring in the result)—I agree with Judge Ott's dissent, as to the improper use of the repudiated portions of the deposition of Dr. Francis W. Rankin and, particularly, its use as the basis for hypothetical questions; I also agree with Judge Ott as to the misuse of text books. I concur in the result of the majority opinion because the evidence of negligence and of proximate cause is so overwhelming that I cannot believe that the errors discussed in the dissent in any way affected the result.

OTT, J. (dissenting)—Rule of Pleading, Practice and Procedure 26, RCW Vol. 0, authorizes the taking of a pretrial oral deposition of an adverse party. When the scrivener has transcribed the questions and answers as he heard and understood them, they are submitted to the witness for signature. Rule of Pleading, Practice and Procedure 30, RCW Vol. 0, authorizes the witness to make changes in the form or substance of either the questions or answers as transcribed, and to enter a statement of his reasons for making them. The corrected deposition shall then be signed by the witness as his sworn testimony. Errors which appear in the deposition can be eradicated by a motion to suppress that part of it. Rule of Pleading, Practice and Procedure 32, RCW Vol. 0.

When the witness, whose deposition has been previously taken, is called to testify at the trial, the contradictory answers to questions in his deposition can be used for pur-

poses of impeachment. Rule of Pleading, Practice and Procedure 26, RCW Vol. 0.

On the deposition in the instant case, the witness gave as his reason for the corrections:

"These changes are necessary for the reasons that *at the time of the deposition either I did not understand the questions correctly, or the transcription is inaccurate or incomplete*." (Italics mine.)

Accordingly, appellant moved to suppress those portions of the deposition which did not constitute his answers to the questions the scrivener had transcribed. The motion was denied. In my opinion, the reason given by the witness, together with the undisputed testimony of his immediate repudiation of the answers to the transcribed questions, and his correction of the answers to conform with the transcribed questions before he would sign the deposition as expressing the truth, conclusively establishes the grounds for granting the motion to suppress. The office of a pretrial deposition is to discover the truth, and those matters which admittedly do not speak the truth, because of mistake or misunderstanding, should be stricken.

Assuming, *arguendo*, that the motion to suppress was properly denied, the court erred in permitting the respondent to use the repudiated answers for impeachment purposes. A person's veracity as a witness cannot be impeached by his statement which he repudiated at the time the statement was made. *Mojas v. McNutt*, 40 Wn. (2d) 61, 240 P. (2d) 928 (1952). Impeachment can only be accomplished when both statements relied upon are shown to have been the actual statements of the witness and are in conflict. Repudiated statements do not establish the self-contradiction necessary for impeachment. *State v. Fliehman*, 35 Wn. (2d) 243, 212 P. (2d) 794 (1949).

The extensive use of the deposition for this purpose was prejudicial error which alone merits a new trial.

At the instance of the respondent, and over the objection of appellant, the court permitted the witness' entire deposition to be read. The deposition then became substantive

evidence of every fact established by it. When the witness has testified at the trial, Rule of Pleading, Practice and Procedure 26, RCW Vol. 0, does not permit his prior deposition to be read to the jury to establish substantive facts. That the deposition was used to establish substantive facts is conceded in the majority opinion in its justification of certain hypothetical questions:

"We have inspected each hypothetical to which error is assigned. In view of our previous ruling that the original deposition of the defendant was admissible in evidence, all of the questions assumed facts of which there was testimony in the record."

By permitting the entire deposition to be read, the court compounded its previous error.

The trial court erred in permitting authors of textbooks to become expert witnesses in the trial of this case, without the authors' being called as witnesses.

On direct and redirect examination, respondent's counsel read excerpts from various medical textbooks to three of respondent's medical experts, and then asked the witness: "Do you agree with this statement [of the author of the textbook]? A. Yes, I do."

Thus the hearsay testimony of the author of a textbook was admitted, on direct and redirect examination of respondent's medical experts, to establish a medical fact. Textbook materials are not a substitute for medical testimony, and their use for this purpose constitutes reversible error. *Skodje v. Hardy*, 47 Wn. (2d) 557, 288 P. (2d) 471 (1955).

In my opinion, the judgment should be reversed and the cause remanded with instructions to grant a new trial.

MALLERY, J., concurs with OTT, J.

---

April 13, 1962. Petition for rehearing denied.