[No. 43128.    En Banc.    July 3, 1975.]

MICHAEL MOEN, *Individually*, *Appellant*, v. CHARLIEN C. HANSON *et al, Respondents.*

*David A. Welts* (of *Welts & Welts*), for appellant.

*Steven A. Branom* and *Wayne C. Vavrichek* (of *Hackett, Beecher & Hart*, for respondents.

*Daniel F. Sullivan* and *Gregg L. Tinker*, amicus curiae, on behalf of Washington State Trial Lawyers Association; *Gerald A. Palm* and *Joel D. Cunningham*, amicus curiae, on behalf of Washington Association of Defense Counsel.

HAMILTON, J.—Wendy Moen died as a result of an automobile collision which occurred December 26, 1970, involv-

ing a car driven by defendant Hanson with the permission of owner-defendant Wolk. At the time of her death, Mrs. Moen was due to be delivered of a child within 30 days. Her husband, Michael Moen, individually and as personal representative, filed a complaint alleging a cause of action arising out of the death of the unborn child. The trial court dismissed the claim on grounds that no such cause of action exists in the state of Washington. The sole question raised by this appeal is whether a parent has a cause of action for the wrongful death of a viable[1] unborn fetus under RCW 4.24.010. It is our conclusion that such a cause of action is authorized by the statute, and is in fact compelled as a matter of logic and policy.

RCW 4.24.010[2] authorizes a parent to maintain an action for the wrongful death of a "minor child." Recoverable damages include, in addition to damages for actual expenses, compensation for "loss of love and companionship of the child and for injury to or destruction of the parent-child relationship . . ."

■ We note initially that the character of this action is one for compensation for the wrongful death of the unborn viable child. It is not a survival action pursuing the "surviving" rights of the decedent child, but is a separate, independent action brought by the expectant father on his own behalf for recovery of his own personal loss—the anguish

---

[1]Viability of the fetus is implicitly acknowledged by the parties at this stage of the proceeding; hence, the question of defining or delimiting viability is not presently before us.

[2]RCW 4.24.010 provides in pertinent part:

"The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either, or both, are dependent for support: *Provided,* That in the case of an illegitimate child the father cannot maintain or join as a party an action unless paternity has been duly established and the father has regularly contributed to the child's support.

". . .

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just."

and sorrow experienced by a parent who suffers the wrongful death of a child. We have previously held that damages for such mental anguish are recoverable under RCW 4.24.010. *Wilson v. Lund*, 80 Wn.2d 91, 491 P.2d 1287 (1971). Clearly a parent's bereavement does not depend upon whether or not the child survives to full term.

A prerequisite to successful prosecution of a wrongful death action is an affirmative answer to the question whether the deceased could have maintained an action had he lived. *Ostheller v. Spokane & I. E. R.R.*, 107 Wash. 678, 182 P. 630 (1919). In *Seattle-First Nat'l Bank v. Rankin*, 59 Wn.2d 288, 367 P.2d 835 (1962), we allowed recovery for prenatal injuries incurred by a viable fetus subsequently born alive. Thus, if the Moen child had survived the collision, he would have been able to pursue a cause of action on his own behalf for any injuries sustained en ventre sa mere.

Defendants contend that the term "minor child" as used in RCW 4.24.010 does not extend to a viable fetus never born alive. We disagree. In *Rankin*, we quoted with approval a New York case, *Woods v. Lancet*, 303 N.Y. 349, 102 N.E.2d 691, 27 A.L.R.2d 1250 (1951), which referred to a viable fetus as a "child." We see no difficulty in including a viable unborn fetus in the statutory definition "minor child" contained in RCW 4.24.010. We do not view the qualifying term "minor" as requiring the conclusion that the legislature intended application of the statute to be limited to those within the ordinary legal definition of the term "minority." Rather, the purpose of the term is to mark the boundary of the parents' potential cause of action. Parents have a right of action only if their child is wrongfully killed before reaching the age of 18. A wrongful death action for one who is tortiously killed *after majority* can be maintained for the benefit of parents only if no spouse or children survive the deceased. RCW 4.20.020. The phrase "minor child" in RCW 4.24.010 makes clear the compatibility of the two statutes. However, no lower age limitation is implied by the term, because none is necessary; an unborn

viable child traditionally has legal existence, personality and rights (see Note, *The Law and the Unborn Child: The Legal and Logical Inconsistencies*, 46 Notre Dame L. 349 (1970-71)), and is easily considered within the "minor child" definition.

Many jurisdictions have considered the question which is now before us for the first time. Recently, the highest courts of Oregon and Illinois have surveyed the alignment of the various states permitting and denying recovery. The alignment is heavily slanted toward recognizing the cause of action. Both the Oregon and Illinois courts permitted recovery. *Libbee v. Permanente Clinic*, 268 Ore. 258, 518 P.2d 636 (1974); *Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 304 N.E.2d 88 (1973). Especially if inevitable differences in specific statutory language are considered, it is clear that the definite trend is toward allowing recovery. *See Action for Death of Unborn Child*, Annot., 15 A.L.R.3d 992 (1967).

Arguments against recovery primarily involve practical considerations, the consequences of which loom large in the eyes of defendants and supporting amicus. It is argued, for example, that permitting a claim for the death of an unborn viable fetus will result in a double recovery, because recovery may also be allowed for the wrongful death or injury of the mother, which by itself should be ample compensation. We cannot agree with this contention for the reason that the possibility of recovery by way of a separate claim for the death or injury of a mother carrying a viable fetus does not recognize and compensate for the mental anguish and suffering undeniably flowing from the death of a viable fetus. The character of the damages pertaining to the respective claims are distinct and separate, just as they are in the event of the tortious loss of a postnatal child and its mother.

Defendants further argue that proof of causation and viability will be severely problematical and will encourage fraudulent claims. We disposed of this argument in *Seattle-First Nat'l Bank v. Rankin, supra* at 292:

We are not unmindful of the fact that a claim for prenatal injuries is prone to present difficult causation issues. This, however, is no reason to deny the sufficiency of the pleading. Difficulty of proof does not prevent the assertion of a legal right.

The experience of other jurisdictions dispels any lingering fears we might have on the issue of difficulty of proof. The Minnesota court has allowed recovery for wrongful death of an unborn child since 1949—apparently without foundering, since the rule was recently reaffirmed. *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949); *Pehrson v. Kistner*, ............ Minn. ............, 222 N.W.2d 334 (1974).

■ Defendants and supporting amicus reserve their best efforts for vigorous argument that viability is an inappropriate point of demarcation for determining the beginning of legal personality. However, we are satisfied that the alternative they advance, that is, recovery only if live birth occurs, is productive of unreasonable results. Denial of recovery to an unborn child tortiously killed, on the arbitrary grounds that the child did not survive the tort long enough to be born alive, is eminently illogical. In 1959, the Ohio Supreme Court posed a hypothetical example involving twins injured simultaneously en ventre sa mere, one born alive and one stillborn. *Stidam v. Ashmore*, 109 Ohio App. 431, 167 N.E.2d 106 (1959). As that court concluded, to allow recovery for only one of the twin victims is logically indefensible. It would be inconsistent to say that the child must first draw breath, then expire, in order to confer upon its parents a right of action for its death. We thus reject birth as the demarcation. We reach no conclusion, however, as to whether recovery can be had for injury to a nonviable fetus.

The essential thrust of the wrongful death statute is its compensatory purpose. Mental anguish and grief at bereavement are clearly experienced by the parent whether or not a viable fetus survives to full term. We therefore find that a cause of action exists under RCW 4.24.010 for

602

wrongful death of a viable unborn fetus. The decision of the Superior Court is reversed, and the cause is remanded for further proceedings.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.