651 P.2d 11

Teresa Marie VOLK and Leslie K. Volk, husband and wife, and Frank Volk and Rebecca Volk, husband and wife, Plaintiffs-Appellants,

v.

Fidel BALDAZO, Kathy Dean Shultz and Dean W. Shultz, Defendants-Respondents.

Fidel BALDAZO, Cross-Claimant,

v.

Kathy Dean SHULTZ and Dean W. Shultz, Cross-Defendants.

No. 13533.

Supreme Court of Idaho.

Aug. 27, 1982.

William J. Brauner, Caldwell, for plaintiffs-appellants.

Michael G. Brady, Boise, for defendant-respondent, Baldazo.

William J. Russell, Robert M. Tyler, Jr., Jeffrey L. Supinger, of Elam, Burke, Evans, Boyd & Koontz, Boise, and Ronald P. Rainey, of Alexanderson, Davis, Rainey & Whitney, and Gary E. Radke, Caldwell, for defendants-respondents, Shultz.

Jeffrey Robert White, Washington, D. C., and Jon J. Shindurling, of May, May, Sudweeks, Shindurling & Stubbs, Twin Falls, for amicus curiae, Association of Trial Lawyers of America.

SHEPARD, Justice.

This appeal is from a partial summary judgment granted defendants on the ground that plaintiffs-appellants failed to state a claim upon which relief could be granted. The trial court order granting partial summary judgment was certified for appeal pursuant to I.R.C.P. 54(b). The sole issue presented is whether an action for the wrongful death of a viable yet unborn fetus states a claim upon which relief can be granted under our wrongful death statute. We reverse and hold that a claim is stated.

At this procedural juncture the allegations of the complaint are considered as true. *Walenta v. Mark Means Co.,* 87 Idaho 543, 394 P.2d 329 (1964). The complaint alleged that on September 13, 1977, plaintiff-appellant, Teresa Marie Volk, was approximately nine months pregnant and would give birth within two weeks. She had experienced no complications during the pregnancy. On September 13, 1977, she was driving an automobile owned by Frank and Rebecca Volk when she was injured in an accident involving a truck driven by defendant-respondent Fidel Baldazo and an automobile driven by defendant-respondent

Kathy Dean Shultz, and owned by Dean W. Shultz. It is alleged that the Volk unborn fetus died within minutes of the accident and approximately eleven hours thereafter, was stillborn.

This action was filed for personal injuries suffered by Mrs. Volk, for damage to the automobile she was driving and for the wrongful death of the viable, unborn fetus. The Volks' claim for the wrongful death of the fetus was the subject of the partial summary judgment on the basis of the trial court's holding that a viable, unborn fetus is neither a "person" within the meaning of I.C. § 5-311 nor a "child" within the meaning of I.C. § 5-310.

I.C. § 5-310 provides:

"5-310. Action for injury or death of unmarried child.—The parents may maintain an action for the injury or death of an unmarried minor child, and for the injury or death of a minor child who was married at the time of his death and whose spouse died as a result of the same occurrence and who leaves no issue, and a guardian for the injury or death of his ward when such injury or death is caused by the wrongful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury or death, or if such person be employed by another person, who is responsible for his conduct, also against such other person."

I.C. § 5-311 provides:

"5-311. Action for wrongful death.— When the death of a person, not being a person provided for in section 5-310, Idaho Code, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

The trial court reasoned that the legislature utilized the term "person" as controlling in both I.C. §§ 5–310 and 5–311 and that I.C. § 32–102 provided particular direction as to whether the legislature intended that a fetus be included within the meaning of the term "person". I.C. § 32–102 provides:

"32–102. Unborn child as existing person.—A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent birth."

Therefore, the court concluded that "a viable fetus, *i.e.*, a fetus capable of sustaining life independent of the mother, is considered a 'person' only if it is born alive" and that under the circumstances alleged in the complaint the Volks' failed to state a cause of action for wrongful death upon which relief could be granted.

We note that the instant circumstances present a number of questions which are of first impression in Idaho, and hence a unique opportunity to clarify the law of Idaho as it pertains to the narrow area presented by these unusual circumstances.

As a predicate to a wrongful death action for the death of a child, this Court has consistently required that the child would have been able to maintain an action for injury if death had not ensued. The recognition of such a cause of action, although it serves as a predicate for wrongful death recovery, is to be decided under the common law of torts and is not controlled by legislative intent. *See e.g., White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Evans v. Olsen,* 550 P.2d 924 (Okl.1976); *Seattle First National Bank v. Rankin,* 59 Wash.2d 288, 367 P.2d 835 (1962). The great majority of jurisdictions have permitted the cause of action on behalf of a child who sustained prenatal injuries and was subsequently born alive. *See* Annotation, 40 A.L.R.3d 1222 (1971). The United States Supreme Court noted in *Roe v. Wade,* 410 U.S. 113, 161–62, 93 S.Ct. 705, 730–31, 35 L.Ed.2d 147 (1973):

"[T]he traditional rule of tort law denied recovery for prenatal injuries even though the child was born alive. That rule has been changed in almost every jurisdiction. In most States, recovery is said to be permitted only if the fetus was viable, or at least quick, when the injuries were sustained, though few courts have squarely so held." (Footnotes and citations omitted.)

The Restatement of Torts (Second) § 869 (1979) states the rule:

"§ 869. Harm to Unborn Children

(1) One who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive.

(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides."

The comment to subsection (1), states that liability:

"is not limited to unborn children who are 'viable' at the time of the original injury, that is, capable of independent life, if only in an incubator. If the tortious conduct and the legal causation of the harm can be satisfactorily established, there may be recovery for any injury occurring at any time after conception."

■ Based on what we deem to be the modern trend and the clear weight of authority, we hold that in Idaho a cause of action will lie on behalf of a viable child who sustains prenatal injuries, but is subsequently born alive. Our holding is limited to the instant circumstances where it is alleged that the fetus was viable at the time of injury. We intimate no view, and reserve for another time any view, on whether such a cause of action will lie on behalf of a child for such negligence committed prior to its conception. *See, e.g., Jorgensen v. Meade-Johnson Laboratories, Inc.,* 483 F.2d 237 (10th Cir. 1973) (a cause of action for prenatal injuries held to be stated when mother took birth control pills prior to conception of mongoloid twins, and pills caused chromosomal abnormalities in mother's womb). Likewise we state no opinion today as to the existence of a cause of action for injuries to a fetus subsequent to conception but prior to viability. *See e.g., Bennett v. Hymers,* 101 N.H. 483, 147

A.2d 108, 110 (1958) (fetus is a separate organism from the time of conception).

■ Hence we hold that if the Volk child had survived the injuries, it would have been able to pursue a cause of action on its own behalf for any injury sustained subsequent to viability.

■ We now turn to a consideration of the defendants-respondents assertions that although a cause of action may have existed in the Volk child if born alive, and hence in its parents, nevertheless, our wrongful death statutes do not contemplate such a cause of action in the parents of a viable fetus sustaining injuries from which it dies and hence is not born alive. Our statutes pertaining to wrongful death actions are in derogation of the common law rule forbidding such action, *Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861 (1980); *Russell v. Cox,* 65 Idaho 534, 148 P.2d 221 (1944), and must be construed "liberally ... to effect their objects and to promote justice." I.C. § 73–102(1); *Gavica v. Hanson, supra.* We are required under principles of statutory construction to ascertain and give effect to legislative intent, *Summers v. Dooley,* 94 Idaho 87, 481 P.2d 318 (1971), and such legislative intent may be implied from a statute's language or inferred on grounds of policy or reasonableness, *Gavica v. Hanson, supra; Summers v. Dooley, supra.*

■ We deem it well settled that statutes authorizing actions for wrongful death are remedial in nature, designed to alleviate the harsh rule of common law that if an injured person died, his cause of action ceased to exist. *Vaillancourt v. Medical Center Hospital of Vermont, Inc.,* 139 Vt. 138, 425 A.2d 92 (1980); *Salazar v. St. Vincent Hospital,* 95 N.M. 150, 619 P.2d 826 (1980). The actions authorized by I.C. §§ 5–310 and 5–311 are not actions arising from the "surviving" rights of a decedent, *Russell v. Cox, supra,* but rather are compensatory in character for the benefit of the named survivors. In Idaho the ele-

ments of such damages may include contributions which the parents might reasonably have expected to receive from the earnings of the deceased during minority and/or the comfort, society and companionship that the deceased would have afforded to the parents. *Checketts v. Bowman,* 70 Idaho 463, 220 P.2d 682 (1950). That pecuniary loss need not be established with certainty, but a substantial loss will be presumed, *Checketts v. Bowman, supra.* Although grief and mental anguish are not to be considered, we have recently held that punitive damages may be properly awarded. *Gavica v. Hanson, supra.*

■ The trial court held, and it is contended here, that the cause of action authorized by I.C. § 5–310 for the death of a "minor child" does not extend to nor include a viable, unborn fetus which died of injuries, and hence was never born alive. We disagree. We hold rather, that the term "minor child" marks the upper age limit beyond which a parent's cause of action may not extend under I.C. § 5–310. Parents, under I.C. § 5–310, have a right of action only if their child suffers wrongful death before reaching the age of eighteen.[1] *Justus v. Atchison,* 19 Cal.3d 564, 139 Cal. Rptr. 97, 565 P.2d 122 (Cal.1977); *Moen v. Hanson,* 85 Wash.2d 597, 537 P.2d 266 (1975). We hold that a lower age limitation is neither implied nor necessary. An unborn viable child traditionally has legal existence and rights and is easily considered within the meaning of the term "minor child".

A child born after a parent's death is recognized as having intestate rights. I.C. § 15–2–108. Posthumous children are treated as if living at the death of their parent for the purpose of inheriting future interests. I.C. § 55–108. The Uniform Anatomical Gift Act defines "decedent" as "a deceased individual and includes a stillborn infant or fetus". I.C. § 39–3401(2). A guardian ad litem may be appointed for unborn persons. I.C. § 15–1–403(d). *See*

---

1. But *Cf. Hogan v. Hermann,* 101 Idaho 893, 623 P.2d 900 (1980), wherein parents brought an action for the death of their 26-year old

married daughter as the daughter's heirs under I.C. § 5–311.

*generally* Note, *The Law and the Unborn Child: The Legal and Logical Inconsistencies,* 46 Notre Dame Law. 349 (1971).

■ I.C. § 32–102 provides: "A child conceived, but not yet born, is to be deemed an existing person *so far as may be necessary for its interests,* in the event of its subsequent birth." It is argued here that the language of that statute "in the event of its subsequent birth" requires the affirmation of the trial court's decision in the instant case. We disagree. We find that statute inapplicable to the case at bar. I.C. § 32–102 is found in Title 32 of the Idaho Code denominated "Domestic Relations", dealing with marriage, annulment, divorce, separate and community property, and the parent-child relationship. I.C. § 32–102 was enacted to protect the rights and interests of children "conceived but not yet born" during divorce, custody, property settlement and similar types of proceedings. On the other hand, Title 5 of the Idaho Code is denominated "Proceedings in Civil Actions in Courts of Record" and Chapter 3 thereof is denominated "Parties to Actions". It is clear, therefore, that I.C. § 5–310 confers upon parents a cause of action for the wrongful death of a "child" and thus protects the rights and interests of the parents, and not those of the decedent child. Thus we hold I.C. § 32–102 and I.C. § 5–310 purport to deal with different subject matters and attempt to protect different interests. They are not statutes *in pari materia* and hence we do not construe I.C. § 5–310 as incorporating within its terms the definition of "person" contained in I.C. § 32–102.

■ It is clear that I.C. §§ 5–310 and 5–311 were enacted to alleviate the harsh rule of common law that while a tortfeasor could be held liable for injuring his victim, he was immune from liability if he killed his victim. The actions authorized by that legislation served two purposes or policies, the first of which is to provide damages to those parties authorized to bring wrongful death actions, *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972), and the second of which is to deter wrongful conduct through the imposition of civil liability. A holding here affirming the trial court would undermine both of those policies and in effect reinstate the harsh rule of the common law that a tortfeasor could be held liable for injury to a fetus, but be granted immunity for the killing of the fetus. Such we hold would subvert the legislative intent as expressed in I.C. §§ 5–310 and 5–311.

While clearly not binding on this Court, we note that at least twenty-seven jurisdictions have held that an action for the wrongful death of a viable fetus may be maintained, although the fetus was not living when born. A contrary holding has arguably been adopted by as many as thirteen jurisdictions. *See* Annotation, 84 A.L. R.3d 411 (1978). We are constrained to agree with the reasoning of what appears to be the majority rule and thus reject live birth as the point of demarcation of the beginning of legal personality. We reach no conclusion, however, as to whether recovery in a wrongful death action can be predicated upon the injury and death of a non-viable fetus.

■ We hold that a cause of action exists under I.C. § 5–310 for the wrongful death of a viable unborn fetus. Hence the decision of the district court is reversed and the cause remanded for further proceedings consistent herewith. Costs to plaintiffs-appellants. No attorney's fees on appeal.

McFADDEN, DONALDSON and BISTLINE, JJ., concur.

BISTLINE, Justice, specially concurring.

The Court's opinion is sound; I write only to join battle against the semantic scalpel thrust at it by the dissent of the Chief Justice. Conceding, as I do, that the statutory law would be more forthright if the phrase "in the event of its subsequent birth" was deleted from I.C. § 32–102, that section makes it beyond dispute that an unborn child is deemed an existing person. As such, it necessarily will arrive in the outside world either by its mother giving birth to it, or its removal from her womb by Caesarean section. But, in either event, I

would submit that it is born. It may enter the outside world alive, or it may not. The statute does not require that such unborn child, "deemed an existing person while it so remains unborn," shall be born alive. The legislature could very easily have inserted the word "live" so that the section would read:

"A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent *live* birth."

But, it did not.

There is no question but that in this case, as the Court's opinion states, the unborn child was a viable fetus. In fact, it was more so a viable fetus than viable fetus is construed by the legislature, which goes so far as to allow for artificial aid in declaring that a viable fetus is such if "potentially able to live outside the mother's womb." I.C. § 18–604(7).

At the time of oral argument in this case, we had just recently considered *State v. Goodrick,* 102 Idaho 811, 641 P.2d 998 (1982), wherein assault with intent to commit rape was committed by threatening to kick a pregnant woman in the stomach. The issue presented in that case, and likewise in this, was whether the defendant, had he committed the threatened dastardly deed, and killed an unborn child, could have been charged with murder. It seemed to me that he could, and so it seems also that in this case, accepting that the law should assess such criminal liability, there should be concomitant civil liability. In that regard my earlier conclusions now seem well fortified by the recent *en banc* opinion of the Oregon Supreme Court in *Libee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636, 637 (1974), cited in the briefs of appellants and of Amicus Curiae.

Regarding the Chief Justice's reliance on *Justus v. Atchison,* 139 Cal.Rptr. 97, 565 P.2d 122 (1977), I remain unconvinced that our I.C. § 32–102 is identical with California's Civil Code § 29, which conclusion I arrive at simply by comparison. Moreover, this 1977 California case is not persuasive in relation to our interpretation of a statute which was enacted in 1887. I do see from *Justus* that that court in 1970 ruled against my belief that the killing of an unborn child would be murder, but also note that the legislature quickly overruled that court's opinion. An observation that should find much general appeal and with which I heartily agree, was made by the California court in *Justus:*

"We are not so naive as to believe that the Legislature entertained any intent at all with respect to fetuses when it first addressed the question of recovery for wrongful death in 1862 and 1872." 565 P.2d at 132.

That statement will, to some, seem appropriate to the validity of the dissenting opinion, especially where the Idaho legislature, in 1973, addressed the status of viable fetuses, as it did in I.C. § 18–604(7).

BAKES, Chief Justice, dissenting:

I believe that I.C. § 32–102 is controlling in this matter and that it precludes a cause of action for the wrongful death of a child not born alive. As the majority recognizes, our statutes pertaining to wrongful death actions are in derogation of the common law rule forbidding such actions, *Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861 (1980), and are to be "liberally construed, with a view to effect their objects and to promote justice." I.C. § 73–102. Nevertheless, it is also the rule that this Court "can neither legislate nor by construction of [a] statute 'enlarge the words to include ... [that which] is not fairly included in the language of the act.'" *In re Danpier,* 46 Idaho 195, 207, 267 P. 452, 455 (1928). Unfortunately, the majority's holding goes far beyond the plain language of the applicable statutes.

I.C. § 5–311 creates a cause of action for "the death of a *person, not being a person provided in section 5–310, Idaho Code.*" I.C. § 5–310 creates a cause of action "for the injury or death of an unmarried minor child." By virtue of the language of I.C. § 5–311, the unmarried child referred to in I.C. § 5–310 is included within the term "person." The question of whether the wrongful death statutes are applicable to an unborn child rests first and foremost

upon how the legislature has defined the word "person," particularly with reference to an unborn child. I.C. § 32–102 is directly on point. It provides the following:

"A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, *in the event of its subsequent birth.*" (Emphasis added.)

Under I.C. § 32–102, an unborn child is to be considered a person during the time prior to birth, "in the event of a subsequent birth." The legislature could very easily have left off the last clause and had I.C. § 32–102 read as follows:

"A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests."

If such were the case, there would be no problem in concluding that any unborn child would be included as a person under the wrongful death statutes. The legislature, however, did not enact such a statute, but rather qualified the recognition of an unborn child as a person upon the subsequent birth of that child. Clearly, I.C. § 32–102 precludes a cause of action for the wrongful death of an unborn child.

The majority concludes in its opinion that I.C. § 32–102 is inapplicable because it is found in Title 32 of the Code, which is the domestic relations section. The majority states that I.C. § 32–102 "was enacted to protect the rights and interests of children 'conceived but not yet born' during divorce, custody, property settlement and similar types of proceedings." When I.C. § 32–102 was originally enacted in the revised statutes of Idaho (1887), it was placed by the legislature at that time in the civil code under separate Title 1, entitled "PERSONS," as appears below:

## TITLE I.

### PERSONS.

| Section | | Section | |
|---|---|---|---|
| 2405. | Minors, who are. | 2410. | Contracts of persons without understanding. |
| 2406. | Unborn child. | | |
| 2407. | When minor may disaffirm. | 2411. | Contracts with other insane persons. |
| 2408. | Cannot disaffirm contract for necessaries. | | |
| 2409. | Nor certain obligations. | 2412. | Powers of persons whose incapacity has been adjudged. |

SECTION 2405. Minors are:
1. Males under twenty-one years of age;
2. Females under eighteen years of age.
SEC. 2406. A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent birth.

---

Our wrongful death statutes predate the original enactment of what is now I.C. § 32–102. *See* Idaho Terr.Code of Civil Proc., §§ 191, 192 (1881). The code commission apparently many years later compiled that statute under chapter 32, the domestic relations section of the present code. That action of the code commission in subsequently relocating the section under the domestic relations title can hardly be persuasive in determining what the original legislative intent was in enacting § 2406 (now I.C. § 32–102) in 1887.

In that regard, we have a California opinion directly on point, which the majority cites, albeit for another purpose. In *Justus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977), the California Supreme Court interpreted an identical statute in conjunction with California's wrongful death statute (Idaho obviously copied its statute from California). The California Supreme Court held that § 29 of their civil code (which is identical to our I.C. § 32–102) defines a "person" within the meaning of California's wrongful death statute, which is essentially equivalent to our stat-

ute. The court concluded that regardless of the so-called modern trend of out-of-state decisions, "they are not persuasive when, as here, the cause of action for wrongful death in this state is a pure creature of statute." 139 Cal.Rptr. 97, 565 P.2d at 127. They then followed the clear provisions of their civil code § 29 (our I.C. § 32–102) and concluded that until a child is born alive, it is not a person for the purpose of California's wrongful death statute. They pointed to several recent cases with a similar statutory scheme which have arrived at the same conclusion, among others of which is *State ex rel. Hardin v. Sanders,* 538 S.W.2d 336 (Mo.1976). The trial judge below wrote an excellent opinion recognizing all of the above points and applying the plainly worded provisions of I.C. § 32–102, just as the California Supreme Court did in *Justus v. Atchison, supra.*

This Court may be, unwittingly, opening another Pandora's box similar to that wrought by our *Rogers v. Yellowstone Park Company* case, 97 Idaho 14, 539 P.2d 566 (1975). In that case this Court abolished the defense of spousal immunity. By today's decision, when combined with the *Rogers* decision, the husband can not only sue the defendant Baldazo for the alleged wrongful death of his unborn child, but he may also sue his own wife if she was also negligent in the accident which resulted in her miscarriage. The defendants assert that the accident was caused solely by Mrs. Volk's negligence.

Today's decision opens the door for suits by the husband against the wife when she negligently causes herself to miscarry, whether in an automobile wreck or otherwise. In fact, it may very well authorize a husband to sue his own wife if she submits to an abortion.

Today's decision may seem like a small step, but, like Pandora's box once opened, it is difficult to envision all of the mischief which may ultimately emerge.

I dissent.