79 P.3d 456 (2003)
119 Wash.App. 36
Holly M. BAUM, individually, and as Personal Representative of the Estates of Jason Robert Baum, Deceased, and Colleen Marie Baum, Deceased, Appellant,
v.
Nadine BURRINGTON, M.D., and John Doe Burrington, wife and husband; and North Cascade Women's Clinic, P.S., Respondents.
No. 50741-9-I.
Court of Appeals of Washington, Division 1.
November 3, 2003.
Christopher M. Rusing, Bellingham, WA, for Appellant.
Mary Spillane, Seattle, WA, for Respondents.
*457 APPELWICK, J.
Holly Baum sued the North Cascade Women's Clinic and Dr. Nadine Burrington, an OB-GYN at North Cascade Women's Clinc, alleging wrongful death of twin, nonviable fetuses she miscarried. Baum appeals the trial court's summary judgment in favor of the respondents, arguing that the term "minor child" in RCW 4.24.010 should be interpreted to permit recovery for the death of nonviable fetuses. We affirm.

FACTS
Holly Baum (Baum) first visited Dr. Nadine Burrington (Burrington), a board-certified obstetrician-gynecologist (OB-GYN), at the North Cascade Women's Clinic on March 3, 1999, after she experienced abdominal cramping and dizziness. Baum's last menstrual period was on January 4, 1999, and she informed Burrington that she believed she was pregnant.
Burrington performed a physical examination, a transvaginal ultrasound, and administered an HCG test for verification of pregnancy. The tests did not indicate a uterine pregnancy. Burrington was concerned that the fluid she observed in Baum's abdomen and uterus might indicate that Baum had an ectopic pregnancy and was bleeding internally.
The parties dispute what happened next. Burrington alleges that she "advised ... Baum of her concern and recommended laparoscopic surgery to confirm an ectopic pregnancy or ascertain a uterine pregnancy which had been undetected by the ultrasound." She also alleged that Baum did not want surgery and instead elected to take Methotrexate to terminate the pregnancy. Baum maintains that Burrington "recommended the improper administration of Methotrexate."
At a follow-up visit one week later, Burrington determined that Baum's pregnancy was not ectopic. Rather, Baum had a uterine pregnancy with twin gestational sacs. Burrington advised Baum that the Methotrexate she had taken could cause severe birth defects. Baum nonetheless chose to continue her pregnancy. On April 16, 1999, Baum miscarried both fetuses. The parties do not dispute that the fetuses were nonviable at the time Baum miscarried.[1]
In early 2002, the Skagit County Superior Court appointed Baum personal representative of the estates of the two fetuses. In February 2002, Baum sued Burrington and North Cascade Women's Clinic for wrongful death. Baum sought damages for herself, for Rico Salvarria as the "surviving father of the [d]ecedents," and as personal representative for the "[e]states of the [two fetuses]".[2]
Burrington and North Cascade Women's Clinic filed a motion for summary judgment dismissal, on the grounds that Washington does not recognize a cause of action for the wrongful death of a nonviable fetus that is not born alive. The trial court granted Burrington's motion and dismissed all of the wrongful death claims. Baum appeals.

ANALYSIS
I. Standard of Review
We review a grant of summary judgment de novo, engaging in the same inquiry *458 as the trial court. Youngblood v. Schireman, 53 Wash.App. 95, 99, 765 P.2d 1312 (1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party." Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 197-98, 943 P.2d 286 (1997). The meaning of a statute is a question of law which the Court of Appeals reviews de novo. State v. Pineda-Guzman, 103 Wash.App. 759, 760, 14 P.3d 190 (2000).
II. RCW 4.24.010
The only question on appeal is whether RCW 4.24.010 should be interpreted to permit recovery for the death of a nonviable fetus.[3]
RCW 4.24.010 provides, in relevant part:
A mother or father, or both, who has regularly contributed to the support of his or her minor child, and the mother or father, or both, of a child on whom either, or both, are dependent for support may maintain or join as a party an action as plaintiff for the jury or death of the child.
. . . .
In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.
RCW 4.24.010.[4] Chapter 4.24 RCW does not define "minor child." Although some case law defines the upper age limit for the term "minor child," neither case law nor chapter 4.24 RCW specifies the lower age limit for "minor child."
The Washington Supreme Court ruled in Moen v. Hanson, that RCW 4.24.010 permits recovery for the death of a viable fetus. Moen, 85 Wash.2d 597, 601, 537 P.2d 266 (1975). The Moen Court expressly declined to decide, however, whether RCW 4.24.010 permits recovery for the death of a nonviable fetus. Moen, 85 Wash.2d at 601, 537 P.2d 266.[5]
As this is a case of first impression in Washington, we look to other jurisdictions for information and guidance. The majority of states allow recovery if a fetus has reached the stage of viability before its death. See Farley v. Sartin, 195 W.Va. 671, 466 S.E.2d 522 n. 13 (1995) ("providing a comprehensive list of the thirty-seven jurisdictions that [as of 1995] recognized a wrongful death cause of action for viable fetuses"). "By contrast, of those jurisdictions that have considered whether their wrongful death statutes similarly permit recovery for death of a nonviable fetus, all but a few have refused to recognize such a cause of action." Santana v. Zilog, Inc., 95 F.3d 780, 783 (9th Cir.1996) (emphasis in original). Of the six states that have extended tort liability to encompass the wrongful death of a nonviable fetus, all but West Virginia acted pursuant to express legislative direction.[6]Santana, 95 F.3d at 783.
*459 The Washington Legislature has not amended RCW 4.24.010 to reverse Moen. The Legislature did amend RCW 4.24.010 in 1998, but did not change its language to provide a cause of action for recovery for the death of nonviable fetuses. The 1998 amendment militates against a cause of action for recovery for the death of a nonviable fetus. The 1998 amendment to RCW 4.24.010 provided a cause of action to a parent who "has had significant involvement in the child's life, including but not limited to, emotional, psychological, or financial support."[7] Laws of 1998, ch. 237, § 1. By emphasizing involvement in a child's life, this language suggests that there is no cause of action for a fetus which does not yet have an independent life.
Moreover, statutes in derogation of the common law are to be strictly construed absent legislative intent to the contrary. Guijosa v. Wal-Mart Stores, Inc., 101 Wash. App. 777, 6 P.3d 583 (2000).[8]
RCW 4.04.010 states:
The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state.
RCW 4.04.010. At common law, a person killed by another's tortious acts had no right to recover damages. See Sarah J. Loquist, The Wrongful Death of a Fetus: Erasing the Barrier Between Viability and Nonviability, 36 Washburn L.J. 259, 259 (1997). The Legislature has not indicated its intent to expand the meaning of "minor child" in RCW 4.24.010 to include a cause of action for recovery for the wrongful death of nonviable fetuses. We therefore interpret the statute narrowly to exclude recovery for nonviable fetuses.
A conservative interpretation of RCW 4.24.010 also comports with the court's treatment of statutes in other areas of Washington State law, which have been interpreted to exclude fetuses (viable or nonviable), barring explicit language to the contrary. As the court in State v. Dunn, observed:
No Washington criminal case has ever included "unborn child" or fetus in its definition of person. When the Legislature intends to include the fetus in a class of criminal victims, it specifically writes that language into the statute. See RCW 9A.32.060(1)(b) (first degree manslaughter: intentional and unlawful killing of "an unborn quick child by inflicting any injury upon the mother of such child"); RCW 9A.36.021(1)(b) (second degree assault: intentionally and unlawfully causing substantial harm to "an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child"). Considering the Legislature's broad, almost plenary, authority to define crimes, the fact that it did not specifically define "child" in RCW 9A.42.010(3) to include a fetus indicates it did not intend to depart from the typical definition of a child as a person from the time of birth to age 18.
Dunn, 82 Wash.App. 122, 128-29, 916 P.2d 952 (1996).[9]
The expansion of RCW 4.24.010 to support a cause of action for the demise of a nonviable fetus should be left to the Legislature to decide. The trial court did not err *460 when it granted summary judgment in favor of Burrington and North Cascade Women's Clinic.
We affirm.
SCHINDLER and AGID, JJ., concur.
NOTES
[1] Burrington appears to concede that the fetus may have been as old as 18 weeks. A declaration by Dr. R. Mize Conner, states:

[A]t 18 weeks of gestation, an unborn child is not sufficiently developed to survive outside of its mother's womb. Such a fetus is not viable without the benefit of the nourishment and protection of the mother's womb. If outside of the womb at 18 weeks (as the unborn fetuses were in this case at the time of the demise) no modern medical procedures and technologies available are implemented to try to keep a fetus alive; nor could the fetuses survive if all currently available measures were taken to try to keep them alive.
Even had Baum become pregnant immediately after her last menstrual period on January 4, 1999, the longest possible gestation of the fetuses on March 3, 1999, when Burrington prescribed Methotrexate, would have been 8 weeks. At the time Baum miscarried on April 16, 1999, the longest possible gestation period would have been 14 weeks. The doctor treating Baum at the time she miscarried assessed the fetus still in-utero as being 7 weeks old.
[2] Ricco Salvarria was not named as a party on appeal.
[3] Black's Law Dictionary defines a viable child as one who is "capable of independent existence outside of his or her mother's womb, ... even if only in an incubator." Black's Law Dictionary (Abridged 6th ed., 1991). Washington courts have never addressed the issue of when a fetus becomes viable. Most states that have addressed the issue have ruled that a fetus becomes viable at either 20 or 24 weeks of gestation. See, e.g., Webster v. Reproductive Health Servs., 492 U.S. 490, 515, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) ("[T]he medical ... gestation is the earliest point in pregnancy where a reasonable possibility of viability exists.").
[4] The Court has also held that RCW 4.24.010 also allows recovery for parental grief, mental anguish, and suffering. Hinzman v. Palmanteer, 81 Wash.2d 327, 501 P.2d 1228 (1972).
[5] In Moen, a mother and her 8-month-old fetus were killed in a car accident. The Court held that the husband/father had a cause of action under RCW 4.24.010 for the wrongful death of the fetus. Moen, 85 Wash.2d at 597-98, 537 P.2d 266. Washington State first allowed recovery for prenatal injuries incurred by a viable fetus when the fetus was subsequently born alive. Seattle First Nat'l Bank v. Rankin, 59 Wash.2d 288, 367 P.2d 835 (1962).
[6] Georgia, Louisiana, Illinois, Missouri, West Virginia, and South Dakota are the six states that as of 1995 had extended tort liability to encompass the wrongful death of a fetus. Santana, 95 F.3d at 783.
[7] Under the 1998 amendment to RCW 4.24.010, claims for the death of a "minor child" may be asserted by "[a] mother or father, or both, who has regularly contributed to the support of his or her minor child...." RCW 4.24.010. This language was added by the Legislature to address equal protection issues following Guard v. Jackson, 132 Wash.2d 660, 940 P.2d 642 (1997).
[8] "Where a statute fails to define a term, there is a presumption that the [L]egislature intended the term to mean what it meant at common law." Gimlett v. Gimlett, 95 Wash.2d 699, 701, 629 P.2d 450 (1981).
[9] But note that "quick" is invariably an earlier stage of pregnancy than viability; fetuses less than two months' old have been "quick," and viability is generally established as occurring at 20 months' gestation at the earliest. Burrington and North Cascade Women's Clinic incorrectly suggest that "quick" is a later occurrence. However, they are correct that the court in Dunn rejected an argument that "child" as used in RCW 9A.42.030, criminal mistreatment, encompassed viable fetuses.