RANSBURG INDUSTRIES and/or d/b/a
Devilbiss Ransburg Industrial Coating
Equipment, Appellant–Defendant,

v.

Rebecca BROWN and Brett Brown,
Appellee–Plaintiff,

Freda, Inc., Appellee–Co–Defendant.

No. 76A03–9507–CV–238.

Court of Appeals of Indiana.

Dec. 21, 1995.

Rehearing Denied April 9, 1996.

Philip E. Kalamaros, Edward N. Kalamaros & Associates, South Bend, for Appellant.

Kevin L. Likes, Likes & Associates, Auburn, Bruce P. Clark, Michael M. Oberman, Munster, for Appellee.

## OPINION

GARRARD, Judge.

Rebecca Brown and Brett Brown filed this action against Ransburg Industries and Freda, Inc., seeking damages for the wrongful death of their son, Brandon Brown. We must determine whether the exclusive remedy provision of the Indiana Worker's Compensation Act[1] bars a tort claim against an employer for prenatal injury occurring in the workplace. We conclude that the Act does not bar such a claim.

## FACTS

The essential facts are not in dispute. In December of 1991, Rebecca was employed by Ransburg. From December 6, 1991 to December 9, 1991, Freda painted the floors of

1. Ind.Code § 22–3–2–6.

2. The parties note that "anoria" may actually be "anoxia," a condition where there is an inade-

the Ransburg facility. At approximately 6:55 a.m. on December 10, the morning following the completion of the painting job, Rebecca arrived for work. At this time, Rebecca was in the first trimester of her pregnancy. She soon became ill from the fumes and odors of the newly painted floor and left the facility at approximately 7:35 a.m., with the permission of her supervisor. On May 27, 1992, Rebecca gave birth to Brandon Brown, who died on that same day. His cause of death was listed as anoria-hypoplastic lungs-oligohydramnios.[2]

The Browns filed this wrongful death action on December 7, 1993. Ransburg moved for summary judgment on the basis of the exclusive remedy provision of the Worker's Compensation Act. The trial court determined that the injuries resulting in Brandon's death did not fall within the exclusive remedy provision and denied Ransburg's motion. Ransburg's petition for certification was granted, and it now appeals.

## DISCUSSION

■■■ The Worker's Compensation Act provides compensation to employees for injuries by accident which arise out of and in the course of their employment. *Burke v. Wilfong* (1994), Ind.App., 638 N.E.2d 865, 868. The rights and remedies under the Act are exclusive and exclude all other rights and remedies of such employees. *Id.* The exclusive remedies provision of the Act provides:

The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1.

I.C. § 22–3–2–6. If a claim is one for which the Act provides the exclusive remedy, then the trial court has no jurisdiction of the subject matter of the claim and the action cannot proceed in that court. *Mannon v.*

quate supply of oxygen reaching the tissues of the body.

*Howmet Transport Service, Inc.* (1995), Ind. App., 645 N.E.2d 1135, 1136. The appropriate method to dispose of the issue of subject matter jurisdiction is not through a motion for summary judgment, but rather by way of a motion to dismiss under Ind.Trial Rule 12(B)(1). *Perry v. Stitzer Buick GMC, Inc.* (1994), Ind., 637 N.E.2d 1282, 1286; *Mannon*, 645 N.E.2d at 1136. Unlike ruling on a motion for summary judgment, the trial court may weigh evidence and resolve factual disputes when ruling on a motion to dismiss for lack of subject matter jurisdiction. *Tapia v. Heavner* (1995), Ind.App., 648 N.E.2d 1202, 1205. We will affirm the trial court's judgment on any theory supported by the evidence of record. *Id.* at 1206.

The issue of whether an action for injuries sustained by a child while in utero against a negligent employer is barred by the exclusivity provision of the Act is one of first impression in this jurisdiction. However, a number of other jurisdictions have addressed this issue, with the majority concluding that the exclusivity provision of a worker's compensation law will not bar an action to recover for a child's prenatal injuries. *Thompson v. Pizza Hut of America, Inc.* (1991), N.D.Ill., 767 F.Supp. 916; *Namislo v. Akzo Chemicals, Inc.* (1993), Ala., 620 So.2d 573; *Pizza Hut of America, Inc. v. Keefe* (1995), Colo., 900 P.2d 97, *reh'g denied; Cushing v. Time Saver Stores, Inc.* (1989), La.App., 552 So.2d 730; *but see Bell v. Macy's California* (1989), 212 Cal.App.3d 1442, 261 Cal.Rptr. 447.[3]

Ransburg argues that we should follow *Bell*, in which the employer's delay in seeking medical attention for the pregnant employee resulted in significant injury to her child. The court concluded that the injury to the child was a "collateral consequence" of the treatment given to the mother and, therefore, the child's injury derived from the employee's injury. *Bell*, 261 Cal.Rptr. at

454–55. No other jurisdiction has adopted the California approach and, upon review of the rationale underlying case law from other jurisdictions and the purposes underlying Indiana's worker's compensation law, we find *Bell* unpersuasive.

In *Thompson*, a pregnant employee was exposed to carbon monoxide and other fumes over a three-day period due to a failure in the ventilation system. The employee complained of nausea during this period, and her child was subsequently born with severe birth defects. The employer argued that the exclusive remedy provision of the Illinois Worker's Compensation Act applied because the child's injuries derived from the injuries suffered by the mother in the course of her employment. However, the court concluded that the worker's compensation act did not bar a child from bringing suit against his mother's employer for fetal injuries. The court noted that while Illinois courts, like Indiana[4], have rejected common law claims made by spouses and children of injured employees which are *based on the employee's injury* (i.e., loss of consortium claims), in this case the child brought a claim *based on his own injuries* which occurred while in utero. *Thompson*, 767 F.Supp. at 918 (emphasis in original).[5] *See also Namislo*, 620 So.2d at 575 (finding *Thompson* persuasive, the court concluded that a claim for injuries suffered by the child of an employee who was exposed to mercury while in utero did not arise from the personal injury to the mother but instead was based on the child's own personal injury).

In *Keefe*, the parties alleged that Pizza Hut forced the employee-mother to work beyond her doctor's recommended work schedule, resulting in the premature birth and subsequent death of her child. In deciding whether the exclusive remedy of the worker's compensation act barred the wrongful death

---

3. The parties cite *Agnew–Watson v. County of Alameda* (1994), 30 Cal.App.4th 626, 36 Cal. Rptr.2d 196; however, as of February 2, 1995, this opinion was ordered not to be officially published and may not be cited as authority.

4. *See Nelson v. Denkins* (1992), Ind.App., 598 N.E.2d 558, discussed *infra*.

5. The court also noted that in Illinois a child may bring a cause of action for prenatal injuries, and it makes no difference whether or not the fetus is viable at the time the injury occurs. *Thompson*, 767 F.Supp. at 918–19. Given that Indiana recognizes preconception torts, we find that the issue of viability raised by Ransburg is similarly irrelevant. *See Walker v. Rinck* (1992), Ind., 604 N.E.2d 591.

action, the court addressed the issue of whether the child's injuries and death derived from the injuries to her mother. The Colorado Supreme Court determined that the child would have had a cause of action against Pizza Hut if she had survived and, therefore, the exclusivity provision did not bar the wrongful death claim:

> [R]egardless of whether the mother was injured, the injury to the child was separate and distinct and subjects the employer to separate liability. In this case, the child's right of action arises out of and on account of her own personal injuries, and not any personal injury suffered by the mother. The mother and child happened to be injured at the same time—the fact that the mother may have been injured, however, is not a bar to tort recovery for the child or a basis for limiting the child's recovery to the workers' compensation law. *The exclusivity provisions do not constitute a bar to a claim asserted by a third-party victim, even though both the employee and the victim were injured together as a result of the same negligent act in a single transaction.*

*Keefe,* 900 P.2d at 101 (emphasis added). The court concluded by holding that the claim of the child was not derivative of any personal injury to the employee mother herself, but, rather, was derived from, and based upon, an injury to the child. *Id.* at 102.

Finally, in *Cushing,* the mother employee fell from a stack of boxes and suffered an abruptio placentia, which caused severe birth defects to her child. In concluding that the Louisiana Worker's Compensation Act did not bar the child's claim for injuries sustained while in utero, the court analyzed prior cases denying claims of spouses and children, finding them inapplicable. We find this analysis to be particularly instructive:

> The Act itself and all jurisprudence construing its various provisions, up to this time, have been focused on injuries to *employees,* and resultant losses by them and certain of their family members, based on the injuries *to the employees.* With regard to the losses of the family members, these might be economic, such as a loss of support because the injured employee was no longer coming home with a pay check, or they might be intangible, such as a loss of consortium because the injured employee was no longer there to participate in family life. However, these losses, while rightfully termed "separate and distinct" and "independent" from those injuries sustained by the employee, always hinged upon the injuries of the employee. Because Dad or Mom suffered an injury, the family suffered a loss *based on that injury.* Thus, the claims of the family members were derivative of the employee's injury, even though the language utilized in the cases recognized an individual loss sustained by each family member, albeit one for which no claim could be asserted.
>
> Such is not the case in this instance. . . . Here, the employee's child has alleged injuries which are in no way derivative of the mother's injury. Whether Mom is there to continue bringing home a pay check or to participate in the child's life has no relevance to this child's alleged brain damage.

*Cushing,* 552 So.2d at 731–32 (emphasis in original).

■ We now turn to an examination of Indiana law. We initially note that our supreme court has recognized a cause of action for a pre-conception tort. *Walker v. Rinck* (1992), Ind., 604 N.E.2d 591.[6] Thus, the inquiry is whether an injury suffered in utero is derivative of the employee-mother's injury and, therefore, barred by the exclusivity provisions of the Act.

Indiana courts have held that a loss of consortium claim is derivative of an employee spouse's claim. *Burke,* 638 N.E.2d at 871;

---

6. In *Walker* the supreme court noted that it had previously held that the terms "wrongful birth" and "wrongful life" "do not apply to cases which allege a defendant's tortious conduct as the cause of abnormalities in infants that would otherwise have been born normal and healthy." *Walker,* 604 N.E.2d at 594, quoting *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 634 n.

2. Damages for wrongful life, which is a claim seeking recovery on behalf of a child for birth defects allegedly due to negligent medical advice or testing which precluded an informed decision about whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate it, are not cognizable under Indiana law. *Cowe,* 575 N.E.2d at 633–635.

*Nelson v. Denkins* (1992), Ind.App., 598 N.E.2d 558. In *Nelson* the court stated: "A cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer." *Nelson,* 598 N.E.2d at 563, quoting *Arthur v. Arthur* (1973), 156 Ind.App. 405, 406, 296 N.E.2d 912, 913. Thus, a loss of consortium claim is barred by the exclusivity provision because the claim is dependant upon the spouse's claim and injury.

■ Ransburg makes much of the fact that Brandon was exposed to the fumes through Rebecca and concludes that Brandon's injury and subsequent death therefore derive from his mother's injury. However, as the discussion in *Cushing* illustrates, the inquiry of whether a claim is derivative focuses not on how the injury occurred but rather on whether the claimed damages are based upon the employee's injury. Here, the wrongful death claim is based solely on the injuries sustained by Brandon. The viability of Brandon's claim is in no way dependant on the validity of Rebecca's claim. *See Nelson,* 598 N.E.2d at 563.

■ The statutory language of the exclusivity provision states that "[t]he rights and remedies granted to an employee ... on account of personal injury or death by accident shall exclude all other rights and remedies of such employee ... [and] dependents ... *on account of such injury or death ....* " I.C. § 22–3–2–6 (emphasis added). While the derivative injury doctrine bars recovery by a third party who claims damages on account of an injury to the employee, if the same third party suffers his own injury, then he has his own claim against the employer. *See Thompson,* 767 F.Supp. at 919 ("[although] the underlying policy of the Act is to provide a no-fault system of compensation which limits the employer's overall liability[,] ... the Act does not alter an employer's liability to non-employees who are injured as a result of the employer's negligence."); *see also Keefe,* 900 P.2d at 101. Clearly, this action to recover for the wrongful death of Brandon is not a claim brought "on account of" Rebecca's claim, as it is based upon the separate harm suffered by Brandon. Thus, this action is not derivative in nature.

■ The purposes underlying the worker's compensation law further support the adoption of the majority viewpoint on this issue. The Act is for the benefit of employees, who were faced with the intolerable results that flowed from the common law's treatment of workers' negligence actions. *Baker v. Westinghouse Elec. Corp.* (1994), Ind., 637 N.E.2d 1271, 1273 (holding that intentional torts committed by an employer are not included within the coverage of the Act); *Frampton v. Central Indiana Gas Company* (1973), 260 Ind. 249, 297 N.E.2d 425, 427. The exclusive remedy provision precludes separate actions for employee injuries only when the injury or death occurs by accident, arises out of employment, and arises in the course of employment. *Stump v. Commercial Union* (1992), Ind., 601 N.E.2d 327, 331 (holding that the exclusive remedy provision does not prohibit an employee from asserting a cause of action against the employer's worker's compensation carrier). Here, we are concerned not with compensation for an employee's injury, but rather with compensation for an injury to a third party allegedly caused by Ransburg's negligence. In *Stump* the supreme court noted the importance of upholding the ideals expressed in Art. 1, § 12, of the Indiana Constitution, and we find these views applicable to the issue before us:

All courts shall be open; and every person for injury done to him and his person, property or reputation, shall have remedy by due course of law. Justice shall be administered freely and without purchase; completely, and without denial; speedily and without delay.

Construing the Act to deny an action for a third-party claimant who has suffered his own injury as a result of an employer's negligence would violate this constitutional guarantee.

The action for the wrongful death of Brandon Brown is not derivative of his mother's claim for injuries. Unlike a loss of consortium claim, the action does not seek compensation for damages suffered by the claimant which arose on account of the injury sustained by the employee. Rather, this action

seeks to recover for the injury sustained by Brandon himself while in utero, which ultimately resulted, it is claimed, in Brandon's death. We therefore affirm and remand for further proceedings.[7]

HOFFMAN and RUCKER, JJ., concur.

7. Ransburg also argues that because it would be barred from instituting a gender-based fetal protection policy, we should conclude that compliance with Title VI of the Civil Rights Act should preempt state tort liability, citing *International Union, UAW v. Johnson Controls* (1991), 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158. However, we do not have before us facts which placed Ransburg in the position where it was impossible to comply with both federal and state law requirements, and therefore the issue of preemption is not implicated. *See id.* at 207–09, 111

S.Ct. at 1208–09; *see also Farmers Union v. WDAY, Inc.* (1959), 360 U.S. 525, 531, 79 S.Ct. 1302, 1306, 3 L.Ed.2d 1407 (where federal law prohibited the removal of defamatory statements in broadcasts of political candidate's speeches and libel action was subsequently filed, court held that to allow libel action "would sanction the unconscionable result of permitting civil and perhaps criminal liability to be imposed for the very conduct the [federal] statute demands of the licensee").