[No. 25265-1-II.   Division Two.   June 23, 2000.]

PATRICIA MEYER, ET AL., *Respondents*, v. BURGER KING CORPORATION, ET AL., *Defendants*, SONRISE MANAGEMENT, INC., *Petitioner*.

*Pamela A. Okano* (of *Reed McClure*); *and Thomas A. Heller* (of *Heller Wiegenstein*), for petitioner.

*George M. Riecan* (of *Riecan & Hall, Inc., P.S.*), for respondents.

SEINFELD, J. — Patricia Meyer sued her mother's employer, Sonrise Management, Inc., for injuries she sustained in utero when her mother lost her footing on a slippery floor at work and fell against a table. Sonrise contends that the Washington Industrial Insurance Act (the Act) bars this negligence action by a family member of a covered employee. The trial court disagreed and denied Sonrise's motion for judgment on the pleadings. The Washington Supreme Court granted Sonrise's motion for discretionary review and transferred the case to this court. Finding Patricia's injuries to be independent, not derivative, we affirm.

## FACTS

In April 1998, Verona and Gary Meyer, on behalf of themselves and their daughter, Patricia, filed suit against Sonrise for negligence. The complaint alleged that both Verona and Patricia were injured in the course of Verona's employment because of unsafe working conditions. The Meyers claimed damages for Patricia's injuries, which allegedly include permanent mental and physical disabilities, and for their own subsequent losses due to destruction of the parent/child relationship.

In December 1998, Sonrise moved for judgment on the pleadings, arguing that the Act, Title 51 RCW, bars family members' claims against employers that arise out of injuries suffered by employees in the course of employment. The trial court denied the motion.

█ In January 1999, Sonrise petitioned the Washington Supreme Court for discretionary review. For purposes of the motion, the parties stipulated to the following facts:

> Verona Meyer was employed by Sonrise Management, Inc. at a Burger King restaurant located near Lacey, WA. On April 26, 1995, Meyer was working her shift at the restaurant. She claims that she was approximately 35 weeks pregnant at the time. She claims that while in the course and scope of her employment on April 26, 1995 she lost her footing and struck her lower abdomen on the corner of a table known as the "Whopper board." Later that evening, Meyer went to the hospital and delivered her baby, Patricia Meyer. Plaintiffs claim that blunt trauma to Verona Meyer's abdomen from the Whopper board caused an abruption of the placenta, in which the placenta partially detached from Verona Meyer's uterine wall. Plaintiffs further claim that as a result of the placental abruption there was a loss of oxygen to Patricia Meyer while she was *in utero*, and that this loss of oxygen in turn resulted in Patricia Meyer being born several hours later with severe injuries. Sonrise has denied and continues to deny plaintiffs' claims. Sonrise denies that it was negligent and further denies that the alleged blunt trauma to Verona Meyer's abdomen, or anything else that occurred while in the course of her employ-

ment at Sonrise, caused the placental abruption or any injuries to Patricia.

Clerk's Papers at 114. The stipulation also states: "The parties agree that the legal issue before the court is whether Plaintiffs' claims, including the claim by Patricia for injuries allegedly sustained *in utero* while Verona was in the course of her employment, are barred under RCW Title 51." After reviewing the pleadings and this additional material,[1] the Supreme Court granted discretionary review and then transferred the case to this court.

## DISCUSSION

██ The parties do not dispute that, in Washington, a child may bring a cause of action for negligence for prenatal injuries. *Seattle-First Nat'l Bank v. Rankin*, 59 Wn.2d 288, 291, 367 P.2d 835 (1962). Thus, the sole issue in this matter is whether the provisions of the Act bar Patricia's claims and those of her parents. This issue is a question of law that this court reviews de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

The Act is based upon a compromise between workers and employers, under which workers can obtain speedy and sure relief and employers obtain immunity from common law responsibility. *Flanigan v. Department of Labor & Indus.*, 123 Wn.2d 418, 422, 869 P.2d 14 (1994); RCW 51.04.010. The compromise abolishes most civil actions arising from on-the-job injuries and replaces them with an exclusive remedy of industrial insurance benefits. *Flanigan*, 123 Wn.2d at 422; RCW 51.04.010.

The exclusivity provision of the Act "is of the broadest, most encompassing nature." *West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976). "By its express terms, the [Act]

---

[1] In reviewing a judgment on the pleadings, the court restricts its consideration to the information contained in the pleadings. But here, the parties asked the reviewing court to consider the additional information contained in the stipulation and the Supreme Court apparently granted review on that basis. Thus, for purposes of this appeal, we consider the stipulation filed with the motion for discretionary review as an amendment to the pleadings.

bars all independent causes of action against the employer for damages arising out of unintentional injury to an employee." *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 752, 696 P.2d 1238 (1985). The first section of the Act, RCW 51.04.010, states, in pertinent part:

> The state of Washington . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, *and their families and dependents* is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.[2]

(Emphasis added.)

RCW 51.32.010 describes those who are entitled to industrial insurance compensation, in pertinent part, as follows:

> Each worker injured in the course of his or her employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever[.]

The Meyers argue that because Patricia was not a "worker" as defined by the Act, her injuries are not covered and she, therefore, has the right to bring an individual tort claim, as do her parents for the losses they suffered as a result of her injuries. Sonrise argues that because Patricia is a "family member," as defined by the Act, and her injuries are a result of Verona's injuries, the Act bars her common law tort claim.

The Act provides relief for injuries sustained by both the worker and his or her family members and dependents when the worker is injured on the job. RCW 51.04.010.

---

[2] The only civil causes of action that the Act specifically does not bar are actions against the employer for intentional injury and actions against third persons. RCW 51.24.020, .030. Neither type of action is involved here.

Although the statute does not define "family," it defines "child," in relevant part, as a "child born after the injury where conception occurred prior to the injury." RCW 51.08.030. Thus, Patricia fits within the Act's definition of family.

The crucial question, however, is whether Patricia's claim against Sonrise is "for damages *arising out of* unintentional injury to" Verona. *Provost*, 103 Wn.2d at 752 (emphasis added). If so, under Washington case law, the Act would bar Patricia's claim. If not, she has the right to bring a separate claim for her injuries.

Because the Act refers not only to "workers," but to "their families and dependents," the Washington Supreme Court has held that the Act provides the exclusive remedy against an employer in cases of workplace injury for the damages sustained by the family members of the injured worker. For example, the *Flanigan* court held:

> Employees and their beneficiaries are limited, for the most part, to the receipt of these workers' compensation benefits. An employee cannot sue the employer and neither can the employee's beneficiaries. Thus, an employer is immune from a suit brought by an employee's spouse, not only when the spouse is attempting to recover damages suffered by the employee, but also when the spouse suffers separate and distinct damages, such as a loss of consortium.

*Flanigan*, 123 Wn.2d at 423. This court has explained the coverage of the Act as follows:

> The Act has preempted all civil causes of action *arising from workplace injuries* with the exception of those third party actions authorized under RCW 51.24 . . . . [The exclusive remedy provisions of the Act] serve to preclude not only the injured worker, but all other persons and members of his or her family, from bringing a separate suit; they even preclude those such as nondependent parents who are not Act "beneficiaries."

*Bankhead v. Aztec Constr. Co.*, 48 Wn. App. 102, 106, 737 P.2d 1291 (1987) (emphasis added) (citations omitted).

To date, Washington courts have consistently barred

claims brought by injured workers' family members. *See Provost*, 103 Wn.2d at 756 (holding the Act bars claims of the wife and child of injured worker for negligent infliction of emotional distress and for loss of spousal and parental consortium); *West*, 87 Wn.2d at 202 (finding the Act precludes parents of deceased worker from bringing wrongful death action); *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200 (1997) (finding the Act precludes claims of spouse of injured worker for negligent infliction of emotional distress). As the court in *Goad* explained, when it rejected the plaintiffs' claims for emotional distress as a separately compensable injury:

> The sole basis for the Goads' claims is [the employer's] alleged failure to provide a safe workplace and Mr. Goad's resulting injury. Their emotional distress claims stem directly from Mr. Goad's injury; the conduct they complain of for those claims is the same conduct at issue in their claims for the workplace injury. The Goads' emotional injuries are not of a different nature, did not arise at different times, and do not have different causal factors from the injury to Mr. Goad's hand. These claims therefore do not have an existence separate from the Industrial Insurance Act.

*Goad*, 85 Wn. App. at 104-05.

■ But the Act does not bar all claims connected to a workplace injury. As the court held in *Birklid v. Boeing Co.*, 127 Wn.2d 853, 870, 904 P.2d 278 (1995), "an injury that is of a different nature, arises at a different time, and stems from different causes than a workplace injury is not barred by the [Act], even though it may result from actions by an employer that injure an employee." (citing *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 573-74, 731 P.2d 497 (1987) (holding that a worker who was injured on the job and was subsequently denied accommodations for his disabilities could bring a claim for discrimination notwithstanding the exclusivity provisions of the Act)).

The appellate courts in this state have not yet addressed a claim that did not arise directly out of an injury to a worker; nor have they determined whether the Act bars a

tort claim by an individual who sustained separate injuries in utero. But cases from other jurisdictions provide guidance. They all conclude that prenatal injuries, even when they occur simultaneously with the mother's work-related injuries, are separate, rather than derivative, and that the exclusivity provisions of workers' compensation acts do not bar such claims. *See Namislo v. Akzo Chem., Inc.*, 620 So. 2d 573, 575 (Ala. 1993) (finding that exclusivity provision of the Alabama Workers' Compensation Act did not bar child's claims for prenatal injuries sustained as a result of employer's exposure of mother to mercury); *Snyder v. Michael's Stores, Inc.*, 16 Cal. 4th 991, 945 P.2d 781, 784-85, 68 Cal. Rptr. 2d 476 (1997) (finding California's exclusive remedy provision did not bar claim for prenatal injury allegedly caused by mother's exposure to carbon monoxide in the workplace); *Pizza Hut of Am., Inc. v. Keefe*, 900 P.2d 97, 99 (Colo. 1995) (finding that a nonemployee child who suffers prenatal injuries as a result of the negligence of the mother's employer is not limited to remedies available under Colorado's workers' compensation law); *Ransburg Indus. v. Brown*, 659 N.E.2d 1081, 1085-86 (Ind. Ct. App. 1995) (finding that exclusive remedy provision of Indiana's Workers' Compensation Act did not bar employee's action against employer for wrongful death of her child, who was allegedly exposed in utero to noxious paint fumes); *Hitachi Chem. Electro-Prods., Inc. v. Gurley*, 219 Ga. App. 675, 466 S.E.2d 867, 869 (1995) (finding negligence actions brought on behalf of children of employees for injuries to children allegedly caused by negligent prenatal exposure to hazardous chemicals were not derivative of any claim of the employee and so were not subject to the exclusive remedy rule of Georgia's Worker's Compensation Act); *Thompson v. Pizza Hut of Am., Inc.*, 767 F. Supp. 916, 918-19 (N.D. Ill. 1991) (finding exclusive remedy provision of the Illinois workers' compensation statute did not preclude infant's suit to recover for injuries suffered in utero allegedly caused by employer's negligent exposure of mother to carbon monoxide); *Cushing ex rel. Brewer v. Time Saver Stores, Inc.*, 552 So. 2d 730, 732 (La. Ct. App. 1989) (finding that

exclusivity provision of Louisiana's workers' compensation statute did not bar child's claim for damages for prenatal injuries suffered as a result of mother's fall at work).[3]

The courts in the above cases reasoned that the injuries to the children did not derive from the injuries to the mothers and, therefore, the children's claims were outside the purview of the workers' compensation laws. As one court stated, " [w]hile the derivative injury doctrine bars recovery by a third party who claims damages on account of an injury to the employee, if the same third party suffers his own injury, then he has his own claim against the employer." *Ransburg Indus.*, 659 N.E.2d at 1085.

The facts in the case before us are most similar to those of *Cushing*. In that case, the mother was performing record-keeping duties in a back room of the store; because the room contained no office furniture, she was compelled to sit on boxes and use crates and plywood as a surface for an adding machine. *Cushing*, 552 So. 2d at 730-31. The plaintiff alleged that the boxes shifted, the mother fell, and the adding machine fell on the mother's abdomen, causing an abruption of the placenta. *Cushing*, 552 So. 2d at 730-31. Her baby was born prematurely 12 days later with severe birth defects, including permanent brain damage. *Cushing*, 552 So. 2d at 730-31.

The *Cushing* court held that the child's injuries were not derivative of the mother's and, thus, the exclusivity provisions of the Louisiana Worker's Compensation Act did not bar his claim. 552 So. 2d at 731. That court reasoned as follows:

> The Act itself and all jurisprudence construing its various provisions, up to this time, have been focused on injuries to *employees*, and resultant losses by them and certain of their family members, based on the injuries *to the employees*. With regard to the losses of the family members, these might be

---

[3] While the workers' compensation statutes of other jurisdictions do not contain identical wording to the Washington statute, the analysis applied in these cases typically does not turn on the statute's exact language. Rather, it depends on the scope of the derivative-injury doctrine. Therefore, the above decisions are helpful.

economic, such as a loss of support because the injured employee was no longer coming home with a pay check, or they might be intangible, such as a loss of consortium because the injured employee was no longer there to participate in family life. However, these losses, while rightfully termed "separate and distinct" and "independent" from those injuries sustained by the employee, always hinged upon the injuries of the employee. Because Dad or Mom suffered an injury, the family suffered a loss *based on that injury*. Thus, the claims of the family members were derivative of the employee's injury, even though the language utilized in the cases recognized an individual loss sustained by each family member, albeit one for which no claim could be asserted.

Such is not the case in this instance, under the allegations of the petition which we must accept as true. Here, the employee's child has alleged injuries which are in no way derivative of the mother's injury. Whether Mom is there to continue bringing home a pay check or to participate in the child's life has no relevance to this child's alleged brain damage . . . .

We find that the Louisiana *Worker's* Compensation Act was neither intended nor purports to affect the rights of an employee's child who is injured on the employee's job site. References throughout the Act's provisions to employees' dependents and children are in the context of claims arising out of the employees' injuries, not the children's injuries. We will not distort the clear meaning of the Act to reach the result suggested by defendants.

*Cushing*, 552 So. 2d at 731-32 (footnote omitted).

Further, the fact that the child and the mother were injured in the same transaction was not controlling. As the *Keefe* court stated:

The petitioners contend that since the mother also claimed an injury in this case, it follows that immunity is grounded upon the employee mother's injury in the workplace. We conclude, however, that regardless of whether the mother was injured, the injury to the child was separate and distinct and subjects the employer to separate liability. In this case, the child's right of action arises out of and on account of her own personal injuries, and not any personal injury suffered by the mother. The mother and child happened to be injured at the

same time — the fact that the mother may have been injured, however, is not a bar to tort recovery for the child or a basis for limiting the child's recovery to the workers' compensation law. The exclusivity provisions do not constitute a bar to a claim asserted by a third-party victim, even though both the employee and the victim were injured together as a result of the same negligent act in a single transaction.

*Keefe*, 900 P.2d at 101.

The *Keefe* court points out that an employee's child, when born, stands in the same position as any other nonemployee member of the public; workers' compensation laws would not bar a claim by a child who was injured when visiting his or her mother in the workplace. 900 P.2d at 101. Thus, it follows that workers' compensation laws do not bar a claim by a nonemployee child who sustains prenatal injuries in the workplace. *Keefe*, 900 P.2d at 101.

Both parties discuss a recent California Supreme Court decision, *Snyder*, 945 P.2d 781. The *Snyder* court reversed a lower court decision that barred a claim for injuries sustained in utero, explaining why the authority relied upon by the lower court was incorrect. That authority, *Bell v. Macy's California*, 212 Cal. App. 3d 1442, 1453-54, 261 Cal. Rptr. 447 (1989), held that fetal injuries are, as a matter of law, derivative of injury to the pregnant mother.

First, the *Snyder* court explained the lower court's reasoning, as follows:

> [E]ven if the employee mother was not herself injured, a "central physical fact . . . compels application of the [derivative injury] doctrine: that the fetus in utero is inseparable from its mother. Any injury to it can only occur as a result of some condition affecting its mother. When, as in the case at bench, the condition arises in the course of employment, the derivative injury doctrine would apply."

*Snyder*, 945 P.2d at 784 (quoting *Bell*, 212 Cal. App. 3d at 1453 n.6) (emphasis omitted). The *Snyder* court then explained that the reasoning in *Bell* contained a "critical error":

> Assuming it true that all fetal injuries occur as a result of some

maternal "condition," to conclude the derivative injury rule applies to all such fetal injuries occurring in the maternal workplace is a non sequitur. Neither the statutes nor the decisions enunciating the rule suggest workers' compensation exclusivity extends to all third party claims deriving from some "condition affecting" the employee. Nor is a non-employee's injury collateral to or derivative of an employee injury merely because they both resulted from the same negligent conduct by the employer. The employer's civil immunity is not for all liability resulting from negligence toward employees, but only for all liability, to any person, deriving from an employee's work-related *injuries*. In the words of the dissenting justice in *Bell*, the derivative injury rule governs cases in which "the third party cause of action [is] derivative of the employee injury in the purest sense: It simply would not have existed in the absence of injury to the employee." As plaintiffs' attorney explained in remarks at oral argument, the rule applies when the plaintiff, in order to state a cause of action, must allege injury to another person—the employee.

945 P.2d at 784-85 (citations omitted).

According to the *Snyder* court, the *Bell* court should have asked "not whether [the child's] injuries resulted from the employer's negligent treatment of Bell or from 'some condition affecting' Bell, but, rather, whether [the child's] claim was legally dependent on Bell's work-related *injuries*." *Snyder*, 945 P.2d at 785 (citation omitted). The *Snyder* court held that, even when the mother is injured, the derivative injury rule does not apply "unless the child's claim can be considered merely collateral to the mother's work-related injury, a conclusion that rests on the legal or logical basis of the claim rather than on the biological cause of the fetal injury." 945 P.2d at 786. In summarizing its holding, the *Snyder* court stated: "the derivative injury doctrine does not bar civil actions by all children who were harmed *in utero* through some event or condition affecting their mothers; it bars only attempts by the child to recover civilly for the mother's own injuries or for the child's legally dependent losses." *Snyder*, 945 P.2d at 786.

■■ The reasoning of the above cases is persuasive and

applicable under the language of the Industrial Insurance Act, which indicates that the purpose of the exclusivity provisions is to bar only those claims that are derivative of injuries to workers. *Provost*, 103 Wn.2d at 752. The Legislature did not intend to bar the claims of third parties who sustain their own injuries in the workplace, even if those injuries result from the same act of negligence.

As in *Cushing*, Patricia's claim is for prenatal injuries initiated by an abruption of the placenta, which led to a loss of oxygen. Her claim and that of her parents for destruction of the parent/child relationship arise out of Patricia's own separate and distinct injuries. The fact that mother and child may have been injured at the same time does not bar the Meyers' claims. Thus, the trial court properly denied Sonrise's motion for judgment on the pleadings.

Finally, Sonrise makes a policy argument that allowing claims for prenatal injuries "eliminates the only protection employers have for possible workplace fetal injuries, since they cannot legally minimize their exposure by discriminating against women of childbearing age." But this contention overlooks the hurdle a plaintiff faces in establishing the elements of negligence. The United States Supreme Court succinctly responded to Sonrise's concern in *International Union, United Auto. v. Johnson Controls, Inc.*, 499 U.S. 187, 111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991), stating:

> Without negligence, it would be difficult for a court to find liability on the part of the employer. If, under general tort principles, Title VII[4] bans sex-specific fetal-protection policies, the employer fully informs the woman of the risk, and the employer has not acted negligently, the basis for holding an employer liable seems remote at best.

*International Union*, 499 U.S. at 208.

Similarly, here, to prevail on these claims, the Meyers will have to establish Sonrise's negligence.

---

[4] Title VII refers to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a- 2000h-6, as amended.

Accordingly, we affirm and remand for further proceedings.

MORGAN and HOUGHTON, JJ., concur.

Review granted at 142 Wn.2d 1007 (2000).