[No. 70015-0. En Banc.]
Argued March 22, 2001. Decided July 12, 2001.

PATRICIA MEYER, ET AL., *Respondents*, v. BURGER KING CORPORATION, ET AL., *Defendants*, SONRISE MANAGEMENT, INC., *Petitioner*.

*Pamela A. Okano* (of *Reed McClure*) and *Thomas A. Heller* (of *Heller, Wiegenstein*), for petitioner.

*George M. Riecan* (of *Riecan & Hall, Inc., P.S.*), for respondents.

JOHNSON, J. — This case involves the claims of a child who suffered prenatal (in utero) injuries. The mother was at work at the time of the accident. We must decide whether the child's claims are barred under the Industrial Insurance Act (Act), Title 51 RCW. The trial court and the Court of Appeals held the injuries to the child were not barred under the Act. We affirm.

## FACTS

The parties stipulated to the following facts. Sonrise Management, Inc., (Sonrise) is the management company for a Burger King Corporation restaurant located in Lacey, Washington. Verona Meyer (Verona) was employed by Sonrise at this Burger King. On April 26, 1995, Verona was working her shift at the restaurant. She was approximately 35 weeks pregnant at the time. While in the course and

scope of her employment on that day, she lost her footing and struck her lower abdomen on the corner of a table known as the "Whopper board." Later that evening, Verona went to the hospital and delivered her baby, Patricia. Verona and Gary Meyer claim that blunt trauma to Verona's abdomen from the Whopper board caused an abruption of the placenta, in which the placenta partially detached from Verona's uterine wall. The Meyers further claim, as a result of the placental abruption, there was a loss of oxygen to Patricia while she was in utero, and this loss of oxygen in turn resulted in Patricia being born several hours later with severe injuries.

In April 1998, the Meyers, on behalf of themselves and their daughter, Patricia, filed suit against Sonrise for negligence. The complaint alleged that both Verona and Patricia were injured in the course of Verona's employment because of unsafe working conditions. The Meyers claimed damages for Patricia's injuries, which allegedly include permanent mental and physical disabilities, and for their own subsequent losses due to destruction of the parent/child relationship.

In December 1998, Sonrise moved for judgment on the pleadings, arguing the Act bars family members' claims against employers that arise out of injuries suffered by employees in the course of employment. The trial court denied the motion.

In January 1999, Sonrise filed a motion in this court for discretionary review. We granted Sonrise's motion for discretionary review and transferred the case to the Court of Appeals. The Court of Appeals found Patricia's injuries to be independent, and not derivative. The Court of Appeals concluded the Act bars derivative actions by "family members," not independent actions, and affirmed the trial court's denial of Sonrise's motion. *Meyer v. Burger King Corp.*, 101 Wn. App. 270, 2 P.3d 1015 (2000). Sonrise filed a petition for review of the Court of Appeals decision, which we granted. The parties agree the sole issue before the court is whether the Meyers' claims, including the claim by

Patricia for injuries allegedly sustained in utero while Verona was in the course of her employment, are barred under Title 51 RCW.

## ANALYSIS

■ We must determine whether the exclusionary provision of the Act bars Patricia's claims and those of her parents. This is a question of law which we review de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

The Act is based upon a compromise between workers and employers. Ch. 51.04 RCW. We have recognized that this compromise abolishes most civil actions arising from on-the-job injuries and replaces them with the exclusive remedy of industrial insurance benefits. *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 422, 869 P.2d 14 (1994). We have also recognized that the exclusivity provision of the Act is broad and encompassing. *West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976). The Act states:

> The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for *workers, injured in their work, and their families and dependents* is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.04.010 (emphasis added). We must determine whether the broad principles embodied in the Act apply in this situation.

■■ In our cases interpreting the exclusionary provision of the Act, we upheld the exclusion of claims brought by family members when such claims derived from the injury to the worker. In *West v. Zeibell*, we held the Act precluded the parents of a deceased worker from bringing a wrongful death action based upon the death of the child. Such an action, although it ostensibly concerned the independent harm suffered by the parents, was held to derive from the injury to the worker. *West*, 87 Wn.2d at 201-03. Similarly, in *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 696 P.2d 1238 (1985), we held the Act barred the wife and child of an injured worker from bringing suit for negligent infliction of emotional distress and loss of consortium. While these claims involved a separate harm to the family members, we concluded the claims were based upon the injury suffered by the employee and were thus barred by the Act. *Provost*, 103 Wn.2d at 753-56.

Therefore, we must first decide whether the claims in this case derive from the injuries to the worker, within the meaning of our prior cases, or whether the claims derive from injuries suffered independently of the injuries to the worker. Here, the mother suffered a blow to the abdomen. There is no claim by the mother for physical injuries caused by her slip and fall, e.g., loss of blood from abruption of the placenta caused by her injury. There is no claim the mother suffered any alleged brain damage. Rather, the claims in this case involve allegations of injury personal to the child. Patricia allegedly suffered massive brain damage due to oxygen deprivation, not due exclusively to a traumatic blow to the head. Because the claims in this case are based upon alleged injuries personal to the child and are not based on the mother's injuries as such, we conclude Patricia's injuries are independent from the injuries to her mother.

This conclusion is consistent with our cases recognizing a

claim under similar circumstances. We have already recognized that a child may bring a cause of action for negligence for prenatal injuries. *Seattle-First Nat'l Bank v. Rankin*, 59 Wn.2d 288, 291, 367 P.2d 835 (1962) (surviving child who suffered in utero permanent brain damage allegedly caused by negligent performance of the attending obstetrician was able to bring a claim); *Moen v. Hanson*, 85 Wn.2d 597, 537 P.2d 266 (1975) (parents able to sue for wrongful death of their minor child who was viable at the time of death, but not yet born). The parties do not dispute this proposition.

However, we must also determine whether the exclusionary provision of the Act prevents these otherwise recognized independent claims. To make this determination, we first look to the language of the Act. The Act states, "relief for workers, injured in their work, and their families and dependents is hereby provided." RCW 51.04.010. The phrase "injured in their work" modifies workers. By *following* this qualification with "families and dependents," the statute indicates any such claims are excluded when they are legally dependent on the injured worker. We find the plain language of the Act incorporates the derivative injury doctrine. The specific language of the statute does not bar family members and dependents who are independently injured by the employer's negligence from bringing a claim. Accordingly, we conclude the language of the Act does not bar the Meyers' claims.

Other jurisdictions that have addressed the issue have reached a conclusion consistent with ours. Even though we will generally not look to cases from other jurisdictions to resolve the interpretation of our own statutes, we find these cases helpful in resolving the issue here.[1] We note the case

[1] *See, e.g., Omori v. Jowa Haw. Co.*, 91 Haw. 157, 981 P.2d 714 (Ct. App. 1999); *Snyder v. Michael's Stores, Inc.*, 16 Cal. 4th 991, 945 P.2d 781, 784-85, 68 Cal. Rptr. 2d 476 (1997); *Pizza Hut of Am., Inc. v. Keefe*, 900 P.2d 97, 99 (Colo. 1995); *Ransburg Indus. v. Brown*, 659 N.E.2d 1081, 1085-86 (Ind. Ct. App. 1995); *Hitachi Chem. Electro-Prods., Inc. v. Gurley*, 219 Ga. App. 675, 466 S.E.2d 867, 869 (1995); *Jackson v. Tastykake, Inc.*, 437 Pa. Super. 34, 648 A.2d 1214 (1994); *Namislo v. Akzo Chems., Inc.*, 620 So. 2d 573, 575 (Ala. 1993); *Thompson v. Pizza Hut of Am., Inc.*, 767 F. Supp. 916, 918-19 (N.D. Ill. 1991); *Cushing ex rel. Brewer v. Time Saver Stores, Inc.*, 552 So. 2d 730 (La. Ct. App. 1989); *Jarvis v. Providence Hosp.*, 178

law from other jurisdictions does not depend on the exact wording of the various states' respective workers' compensation statutes. These jurisdictions unanimously concluded that prenatal injuries are separate, rather than derivative, even when the injury occurs simultaneously with the mother's work-related injuries. Furthermore, these cases likewise hold that the exclusivity provisions of their respective workers' compensation acts do not bar such claims.

The most analogous representative case is *Cushing ex rel. Brewer v. Time Saver Stores, Inc.*, 552 So. 2d 730 (La. Ct. App. 1989), where the Louisiana Court of Appeals held the exclusivity provision of Louisiana's workers' compensation statute did not bar a child's claim for damages for prenatal injuries suffered as a result of the mother's fall at work. *Cushing*, 552 So. 2d at 731-32. In that case, the mother was performing recordkeeping duties in the store's back room. The room was without furniture, so the woman was compelled to sit on boxes and use crates and plywood as a surface for an adding machine. The boxes shifted, the mother fell, and the adding machine fell on her abdomen, causing an abruption of the placenta. Her baby was born prematurely 12 days later with severe birth defects, including permanent brain damage. The Louisiana court reasoned the exclusivity provision of the statute barred actions that depend on the injuries of the employee, such as loss of support or loss of consortium (i.e., because the mother/father or husband/wife suffered an injury, the family suffered a loss based upon that injury). The *Cushing* court found the child's injuries in no way derived from the mother's injuries because "[w]hether Mom is there to continue bringing home a pay check or to participate in the child's life has no relevance to this child's alleged brain damage." *Cushing*, 552 So. 2d at 732. The court held the workers' compensation statute was not intended to nor does it purport to affect the rights of an employee's child who is

---

Mich. App. 586, 444 N.W.2d 236 (1989); *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267 (M.D. Tenn. 1986); *Witty v. Am. Gen. Capital Distribs., Inc.*, 697 S.W.2d 636 (Tex. Ct. App. 1985), *aff'd in part and rev'd in part*, 727 S.W.2d 503 (Tex. 1987).

injured on the employer's jobsite.

The Colorado Supreme Court reached the same conclusion in *Pizza Hut of America, Inc. v. Keefe*, 900 P.2d 97 (Colo. 1995). In that case, the court reasoned the fact the mother and child were injured in the same event does not render the damage to the child derivative of the mother's injury because the child's right of action arises out of the child's own personal injuries and not merely the personal injuries suffered by the mother. *Keefe*, 900 P.2d at 101. When the employee's child is *born*, it stands in the same position as any other nonemployee member of the public. Workers' compensation laws would not bar a claim by a child who was injured while visiting his or her parent in the workplace. Therefore, the exclusivity provisions of workers' compensation statutes do not bar claims by a nonemployee child who sustains prenatal injuries in the workplace, as it does not bar claims asserted by third party victims. *Keefe*, 900 P.2d at 101. A nonemployee's injury is neither collateral nor derivative of an employee's injury merely because both resulted from the same negligent conduct by the employer. Thus, a child still in the womb can sustain independent injuries arising from the same event allegedly caused by the negligence of the employer.

Most recently, the Hawaii Supreme Court reached a similar conclusion. In *Omori v. Jowa Hawai'i Co.*, 91 Haw. 157, 981 P.2d 714 (Ct. App. 1999), a pregnant employee who worked at a convenience store had her water break prematurely. Her doctor ordered her to stop working. However, the convenience store manager refused to allow her time off. Her job included lifting boxes, stacking shelves, and various cleaning duties. Allegedly, as a consequence of being forced to continue working, the mother suffered a premature rupture of the membrane and the child was born prematurely with severe physical injuries. The mother brought suit on behalf of the child for his injuries and also for loss of consortium with the child. The court found the child's injuries were independent of any injury to the worker and held Hawaii's workers' compensation statute

*did not bar* a child from bringing an action against the mother's employer for prenatal injuries, *nor* a claim by the parents for loss of consortium. *Omori,* 981 P.2d at 717-19.

Sonrise does not distinguish these cases from the present case, other than to argue its disagreement with such holdings. Sonrise avoids any discussion of the distinction between independent and derivative claims. Instead, Sonrise primarily argues Patricia and her parents cannot bring a claim against Sonrise because Patricia's mother was an employee injured on the job and Patricia is part of the employee's family. While this is true, it misses the point. The Act applies to workers injured on their jobs and the claims that derive from the worker's injury. No argument is made that Patricia is a worker injured on the job. Rather, it is clear that Patricia is a third party in relation to the employer/employee relationship between Verona and Sonrise. The Act does not apply to third parties, family or dependents, who themselves suffer an injury not legally dependent on the employee's injury.

Sonrise argues it is impossible to separate Patricia's injury from her mother's because it was the workplace injury to the mother that allegedly caused the abruption of the placenta. Thus, Patricia's injuries are no different in nature than her mother's; they did not occur at a different time than her mother's; and they did not have a different causal factor than her mother's. Sonrise's argument ignores the fact Patricia's injury was to her brain because of a lack of oxygen, while Verona's injury was to her womb and placenta. While the mother and child in utero are physically connected, an injury to one is not necessarily an injury to the other. Patricia's claim is independent because it is based upon separate and distinct injuries she sustained due to the alleged negligence of Sonrise.

 Sonrise argues that allowing claims by children injured while visiting the workplace is entirely different from allowing claims by children who were injured in utero while their mothers were on the job. Employers can control the risk of workplace injury to third persons by simply barring

them from the workplace. Generally, a workplace cannot bar pregnant women from the workplace without violating antidiscrimination laws. *See, e.g., Keefe*, 900 P.2d at 103-04 (Rovira, C.J., dissenting). However, Sonrise's argument about an employer's inability to protect an unborn fetus in the workplace without engaging in discrimination is legally unpersuasive. The Court of Appeals addressed this argument in its decision:

> The United States Supreme Court succinctly responded to Sonrise's concern in *International Union, United Auto. v. Johnson Controls, Inc.*, 499 U.S. 187, 111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991), stating:
>
>> Without negligence, it would be difficult for a court to find liability on the part of the employer. If, under general tort principles, Title VII bans sex-specific fetal-protection policies, the employer fully informs the woman of the risk, and the employer has not acted negligently, the basis for holding an employer liable seems remote at best.
>
> *International Union*, 499 U.S. at 208.

*Meyer*, 101 Wn. App. at 282 (footnote omitted). We agree. Thus, an employer need only fully inform the pregnant employee of the risks in order to directly avoid discriminating. The burden remains on the plaintiff to prove negligence. We are mindful of the fact that a claim for prenatal injuries presents difficult causation issues. However, difficulty of proof does not prevent the assertion of a legal right. *Rankin*, 59 Wn.2d at 292.

Sonrise misses the critical distinction focused on by the Court of Appeals and by courts of other jurisdictions resolving the same question of law at issue in this case. The plain language of the Act, even when read most broadly, indicates the Act bars only derivative claims by the family and dependents of injured employees. Furthermore, under *Rankin*, Patricia counts as a legal party who suffered prenatal injury. The Act does not bar such third parties from bringing a claim for damages for injuries suffered due to the employer's negligence. Therefore, Patricia's claims

and her parents' related claims of loss of the parent-child relationship are not barred by the Act.

## CONCLUSION

We affirm the Court of Appeals and remand this case to the trial court.

ALEXANDER, C.J., and SMITH, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.

BRIDGE, J. (concurring) — I write separately to emphasize the narrow nature of the majority's holding, which merely grants retroactive relief to a child who was born alive for injuries that were suffered before her birth.

The Industrial Insurance Act, Title 51 RCW, provides an exclusive remedy for workers injured in the course of employment and for their families and dependents. RCW 51.04.010. For the purposes of the Act, a "child" includes a "child born after the injury where conception occurred prior to the injury." RCW 51.08.030. Patricia then is included in the Act's definition of a child for the limited purpose of determining whether she is entitled to compensation. Thus, when a mother and child are injured in the same event, the child's right of action arises out of *his or her own personal injuries* and is not derived from the personal injuries suffered by the mother.

This court has previously held that, in certain very limited circumstances, a child who is later born alive has a cause of action for injuries sustained in utero. For example, in 1962, we held that a negligent or intentional injury to an unborn child gives rise to an action in tort by the child *after* he or she is *born alive. Seattle-First Nat'l Bank v. Rankin,,* 59 Wn.2d 288, 291, 367 P.2d 835 (1962). In *Rankin*, a child born with cerebral palsy because of the physician's failure to diagnose and treat anemia in the mother recovered damages for malpractice. *See also Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 656 P.2d 483 (1983) (recognizing a cause

of action for wrongful life from injuries suffered before birth); *George v. Parke-Davis*, 107 Wn.2d 584, 733 P.2d 507 (1987) (holding manufacturers of DES liable to a woman born alive but injured in utero).

The common thread throughout all these cases is a limited recognition of a *person's* retroactive right to recover for prenatal injuries. The United States Supreme Court has likewise upheld recovery for prenatal injuries for children later born alive, while clarifying that "the unborn have never been recognized in the law as persons in the whole sense." *Roe v. Wade*, 410 U.S. 113, 161-62, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). While upholding Patricia's right to a remedy because she is a person exercising her retroactive right to recover for prenatal injuries, we do not recognize a fetus as a "person[] in the whole sense" and thus do not affect the jurisprudence established under *Roe*.

With this clarification, I concur.